■ In the Matter of PERRY BELLAMY, Appellant, v NEW YORK CITY POLICE DEPARTMENT et al., Respondents. [708 NYS2d 5] —Order, Supreme Court, New York County (Beverly Cohen, J.), entered October 9, 1998, granting respondents' cross-motion to dismiss petitioner's petition which sought to vacate the denial of his Freedom of Information Law (FOIL) request, unanimously modified, on the law, to direct respondents to conduct a diligent search for the records that they alleged they were unable to locate, and the matter remanded for an in-camera review by Supreme Court to ascertain the applicability of the redactions and exemptions claimed by respondents pursuant to Public Officers Law § 87 (2) (b), (2) (f) and (e) (iv), and otherwise affirmed, without costs.

Petitioner was convicted of murder in 1986, following his inculpatory statements to the police in which he claimed to have been present during the planning of the murder and to have lured the victim to the scene. During the Federal narcotics prosecution of other participants in the murder scheme, these individuals asserted that petitioner had not been involved.

In furtherance of his attempt to obtain a new trial in state court, on July 17, 1997, petitioner requested copies of the following documents from respondents, pursuant to the Freedom of Information Law (Public Officers Law art 6):

1. Arrest Reports (UF4)
2. Booking Arrest Worksheet
3. Mugshot
4. Complaint Report (UF61)
5. Complaint Follow-up (UF5; PD 313-081)
6. Crime Incident Data Sheet (PD313-152c)
7. Arrest Invest. Report

8. "Supp. Arrest Invest. Report."

9. Unusual Occurrence Report (DD84)

10. Police Memo Book Entries

11. Sprint Incident Inquiry

12. Activity Log

13. Case Invest. Reports

14. Crime Scene Unit Supplementary Report

15. Request for Laboratory Exam for Fingerprints and Ballistics

16. Detective Individual Care Log Reports

17. Any and all Faxes in connection with this case

18. All the F.B.I. Reports, kept on file with respondent

19. DD5's Reports

20. Line-up Worksheet and Photographs

21. Property Clerk Invoice

22. Statements made by Mike Brown

23. Statements made by Terry Trantham

24. Statements made by Larry Robinson

25. Statements made by Dennis Morris

26. Statements made by Jeffrey Ruffin

On November 11, 1997, petitioner amended his request to include the following:

27. Any and all statements made by witness Mike Brown

28. Any and all statements made by witness Terry Trantham

29. A copy of the 911 Tape of October 10, 1985 from the hours of 4:00 P.M. to 9:00 P.M.

30. Any and all statements made by witness Denise Morris on October 10 and October 11, 1985 to the New York City Police

31. Any and all audio/visual recordings of the interview conducted with Mike Brown

32. Any and all audio/visual recordings of the interview conducted with Terry Trantham

33. A copy of the Sentencing Report of Mike Brown

34. A copy of the Sentencing Report of Terry Trantham

35. A copy of the Sentencing Report of Mike Brown

36. A copy of the Probation Report of Terry Trantham

Although respondent Police Department had advised him that it would make a determination within 120 days, no re-

sponse was forthcoming. Petitioner filed an appeal with respondents in January 1998, requesting that a determination be issued and asserting that respondents' silence was tantamount to a denial of his request. In February, petitioner contacted respondents again, seeking information on the status of his appeal. Having heard nothing from respondents by May 4, 1998, he commenced the instant action seeking to vacate the constructive denial of his FOIL request.

By letter dated May 27, 1998, respondents informed petitioner that his appeal had been granted. They promised that they would immediately provide access to all documents which have been located and for which no statutory exemptions applied. By letter dated August 6, 1998, Lieutenant Glen Suarez advised petitioner that he would be provided with items 1, 3, 4, 14, 19 and 21, as well as a Latent Prints Report, upon payment of the $10 fee. He indicated that redactions had been made because release posed "an unwarranted invasion on personal privacy" or because it "would endanger the life or safety of any person," citing to Public Officers Law § 87 (2) (b) and (f). Additionally, he denied the release of one DD-5 on the ground that its release "would reveal non-routine investigatory techniques" pursuant to section 87 (2) (e) (iv). (A DD-5 is a Complaint Follow-up Report.) As to items 18, seeking FBI reports, and 33 through 35, seeking sentencing reports, he referred petitioner to the FBI and the sentencing court, respectively.

Finally, he asserted that "[b]ased on the information you provided and after searching for the following requested document(s), this unit was unable to locate":

Unusual Occurrence Report (Item 9)

Audio/Visual Recordings of interviews (Items 31-32)

Sprint Printout and 911 Tape (Items 11 and 29)

Request for Lab Exam (Item 15)

Line-up Report & Photos (Item 20)

Vouchers #A132709 & C170306 (Item 21)

Witness Statements (Items 22-28 and 30)

Memo Book (Item 10)

Faxes in connection with this case (17)

Respondents cross-moved to dismiss the petition for mootness. Petitioner opposed, as he did not believe that respondents had adequately complied with his FOIL request. He challenged the redaction of the documents offered by respondent, claiming that he needed to know the identity of potential witnesses

whom he could call in other proceedings. He urged an in-camera review of withheld documents to determine whether the exemptions claimed by respondents apply. He also argued that respondents had not made any showing that they made a diligent search for the items they were allegedly unable to locate. Without addressing these issues, the court dismissed the petition on the grounds that petitioner had not paid the $10 copying charge.

The court erroneously overlooked petitioner's meritorious contention that respondents' compliance was incomplete. Obviously, payment of the $10 is not a condition precedent to receipt of any documents whatsoever, because respondents have already made certain documents available. The court appeared to assume that respondents had complied fully and that only petitioner's failure to pay the surcharge was delaying his access to the materials.

When an agency denies a request because it cannot find the requested documents in its file, it must certify that it does not have possession of the document after a diligent search (see, Public Officers Law § 89 [3]; *Matter of Qayyam v New York City Police Dept.*, 227 AD2d 188, 189). Conclusory certifications made upon information and belief by people without direct knowledge are insufficient to show a diligent search (see, *Matter of Key v Hynes*, 205 AD2d 779, 781).

This burden was not met, because respondents failed to certify either that the Police Department did not have the records that it claimed were not in its possession or that it had conducted a diligent search for the records (*Matter of Cuadrado v Morgenthau*, 267 AD2d 46). Lieutenant Suarez merely stated that "[b]ased on the information you provided and after searching for the following requested document(s), this unit was unable to locate" certain documents. It is unclear what role, if any, he played in searching for the documents and whether in fact a diligent search had been conducted.

Under FOIL, government records are presumptively open for public inspection and copying unless a statutory exemption applies (*Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 274-275). In keeping with this policy of government accountability and openness, such exemptions are to be narrowly construed, with the burden resting on the agency to provide particularized reasons why the material in question is exempt (*Matter of Hanig v State of N. Y. Dept. of Motor Vehicles*, 79 NY2d 106, 109).

In *Matter of Johnson v New York City Police Dept.* (257 AD2d 343, *lv dismissed* 94 NY2d 791), this Court took note of the

competing considerations involved in a FOIL request for DD-5 Reports from a homicide investigation. We held that an in-camera review of the documents by Supreme Court was the best way to balance the witnesses' safety and privacy concerns against the strong policy preference for open disclosure (*supra*, at 349). This analysis applies to the case at bar. Respondents did not even articulate what type of information was contained in this DD-5, but simply offered their conclusion that the document would reveal confidential non-routine investigatory techniques.

For similar reasons, Supreme Court on remand is directed to conduct an in-camera review of the unredacted versions of those documents that were released in redacted form, i.e., the Arrest Report, Complaint Report, various DD-5s, Crime Scene Report, Latent Print Report and Voucher C170291, to ascertain whether they fall within the privacy and safety exemptions under section 87 (2) (b) and (f).

In light of the foregoing, we need not address petitioner's due process arguments. Concur—Rosenberger, J. P., Williams, Rubin, Saxe and Buckley, JJ.