■ In the Matter of BARRY SANDERS, Appellant, v WILLIAM J. BRATTON et al., Respondents. [718 NYS2d 19] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered October 22, 1999, which denied petitioner's motion to compel disclosure of the requested items and granted respondents' cross motion to dismiss, unanimously modified, on the law, the cross motion denied and the petitioner's motion granted to the extent of deeming petitioner's request for items 2 and 5 moot, directing respondents to conduct a diligent search for items 1, 3, 4, 6, 7 and 11, directing respondents to disclose item 9 and to certify whether or not item 13 exists, and remanding the matter for an in camera review by Supreme Court of items 10 and 12 to ascertain the applicability of exemptions claimed by respondents pursuant to Public Officers Law § 87 (2) (e) (iii), and otherwise affirmed, without costs.

Petitioner was convicted of criminal sale of a controlled substance in the third degree following a buy-and-bust operation. By letter dated October 1, 1996, petitioner requested copies of the following documents from respondents, pursuant to the Freedom of Information Law ([FOIL] Public Officers Law art 6):

"1. Chain of custody and storage reports or files for Evidence Storage Bag #9318839.

"2. Vouchers or reports in regard to Tax Reg. No. 895159 and 880842.

"3. Any and all 'Buy & Bust' operation subject cover sheets, including locations, drugs sold, brand names, teams, team leaders, number of teams and amount of money used or traded in each Buy & Bust operation.

"4. Photos of each Buy & Bust operation of 5/27/93.

"5. All Laboratory Examinations of each alleged controlled substance bought or sold on 5/27/93.

"6. Any and all US currency recovered/vouchered on 5/27/93.

"7. Any and all US currency used in the Buy & Bust operation as issued for the purposes of the Buy & Bust on 5/27/93.

"8. Identification of any and all Undercover officers in the Buy & Bust Operation including UC #13564 and UC #6215.

"9. Undercover daily activity reports, notes, memo books.

"10. Undercover expense reports, files or records.

"11. Photos of brown envelope in regard to evidence #348468.

"12. Any and all 'tactical plans' for 5/27/93.

"13. Any and all Radio, CB Transmission or Sprint runs."

By form letter dated December 28, 1998, the Records Access Officer advised petitioner that items 9 and 13 were not prepared in this matter; that the request for items 10 and 12 was denied in that "release of such would reveal non-routine investigatory techniques"; that the request for item 8 was denied "in that release of such would endanger the life and safety of any person"; and, with respect to items 1-7 and 11, "after searching for the * * * requested document(s), this unit was unable to locate" them.

However, with respect to items 1, 3, 4, 6, 7 and 11, respondents have failed to certify either that the Police Department did not have possession of such records or that it had conducted a diligent search for the records and was unable to find them.

When an agency denies a FOIL request because it cannot find the record, it must certify that it does not have possession of such record or that such record cannot be found after diligent search (Public Officers Law § 89 [3]; *see, Matter of Rattley v New York City Police Dept.*, 270 AD2d 170, *lv granted* 276 AD2d 1016; *Matter of Bellamy v New York City Police Dept.*, 272 AD2d 120; *Matter of Qayyam v New York City Police Dept.*, 227 AD2d 188). Conclusory allegations made upon information and belief by persons with no apparent direct knowledge are insufficient to satisfy the statutory requirements (*cf., Matter of Key v Hynes*, 205 AD2d 779, 781).

Respondents' letter merely indicated that they were unable to locate items 1-7 and 11. However, it is not clear what role, if any, the Records Access Officer had in searching for the documents and whether a diligent search had in fact been conducted. Likewise, the attorney's affirmation, submitted in support of respondents' cross motion to dismiss the petition, which was prepared on information and belief, does not satisfy the statute's certification requirement inasmuch as the attorney had no personal knowledge that a diligent search had been conducted. Accordingly, respondents are directed to conduct a diligent search for items 1, 3, 4, 6, 7 and 11 and provide a more detailed certification regarding the outcome of that search by a person having direct knowledge.

"The mere fact that disclosure was available to the applicant through some other discovery device * * * does not ipso facto preclude FOIL relief, if warranted" (*Matter of Moore v Santucci*, 151 AD2d 677, 678 [citations omitted]). The burden of

proof rests with the agency to demonstrate that petitioner's specific requests are moot (*id.*). Respondent has failed to sustain that burden as there is no indication in the re-typed pages of the trial transcript submitted by petitioner that defense counsel was actually given items 6 and 7 during the trial.

Respondents' form letter states that items 9 and 13 "were not prepared in this matter." However, the aforementioned uncertified pages of the trial transcript indicate that the documents described in item 9, i.e., "Undercover daily activity reports, notes, memo books," do exist. During the undercover officer's trial testimony, he made specific reference to his "Daily Activity Report," which he was holding on his lap. Therefore, respondents are directed to disclose that officer's "Daily Activity Log." Further, given that respondents' form letter incorrectly indicated that item 9 was "not prepared in this matter," when it apparently was, respondents are directed to certify whether or not item 13, which they similarly accounted for, exists.

Respondents contend that item 10—"Undercover expense reports, files or records"—and item 12—"Any and all 'tactical plans' for 5/27/93"—are exempt from disclosure inasmuch as they would reveal non-routine criminal investigative techniques or procedures.

"To promote open government and public accountability, the FOIL imposes a broad duty on government to make its records available to the public * * *. All government records are thus presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions of Public Officers Law § 87 (2)" (*Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 274-275). Those " 'exemptions are to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption' " (*id.*, at 275 [citations omitted]). "[T]he agency must articulate 'particularized and specific justification' for not disclosing requested documents" (*id.*, at 275, quoting *Matter of Fink v Lefkowitz*, 47 NY2d 567, 571).

Pursuant to Public Officers Law 87 (2) (e) (iii), the above referenced documents may be exempt as records of buy-and-bust operations, if disclosure would reveal confidential sources and information as well as investigative techniques (*see, Matter of Ennis v Slade*, 179 AD2d 558, *lv denied* 79 NY2d 758; *cf., Matter of Moore v Santucci*, 151 AD2d 677, 678-679, *supra* [Not all police records produced during a criminal investigation are exempt from disclosure under FOIL—a police report may

be withheld or redacted in part, if such information was compiled for law enforcement purposes *and*, if disclosed, would, *inter alia*, identify confidential sources or disclose confidential information relevant to law enforcement investigations.]). However, it appears that item 12 was used as evidence at trial. Thus, there is a question as to whether the "Tactical Plan" is confidential or whether its disclosure would reveal non-routine investigatory techniques (*see, Matter of Moore v Santucci, supra*, at 679 ["(O)nce the statements have been used in open court, they have lost their cloak of confidentiality and are available for inspection by a member of the public"]). Likewise, undercover expense reports or files may be exempt if they revealed confidential sources or investigatory techniques. However, other than respondents' general assertion that such records are confidential, they have not articulated "a 'particularized and specific justification'" for nondisclosure (*Matter of Gould v New York City Police Dept., supra*, 89 NY2d, at 275).

Accordingly, the Supreme Court is directed to conduct an in camera inspection of items 10 and 12 to determine whether they fall within an enumerated exemption (*see, Kashti v New York City Police Dept.*, 227 AD2d 313).

The petition was properly dismissed with respect to item 8 inasmuch as there is no doubt that revealing the identity of the undercover officers would seriously jeopardize their safety (*see, Matter of Stronza v Hoke*, 148 AD2d 900, *lv denied* 74 NY2d 611).

Finally, on April 28, 2000, in response to an April 5, 2000 FOIL request, respondent supplied petitioner with several documents including items 2 and 5 of petitioner's October 1, 1996 FOIL request. Accordingly, the petition as it relates to those items is moot. Concur—Nardelli, J. P., Mazzarelli, Lerner, Andrias and Buckley, JJ.