OPINION OF THE COURT
Lewis Bart Stone, J.
Petitioner Gail Thomas commenced this proceeding by notice of motion dated on October 18, 2005, pursuant to article 78 of the Civil Practice Law and Rules, to review a denial by the records access officer (RAO) of respondent City of New York Department of Housing Preservation and Development (HPD) of her request to HPD, pursuant to Public Officers Law §§ 87 and 89, for copies of certain documents in the possession of HPD and other information. HPD opposes the motion.
Petitioner is a resident of West Village Houses, a middle income rental housing development, located in New York City, developed pursuant to article 2 of the Private Housing Finance Law. These developments are sometimes known as Mitchell-Lama developments. Under Private Housing Finance Law article 2, certain Mitchell-Lama developments in the City are subject to the regulatory oversight of HPD. Under Private Housing Finance Law § 32 (3) and § 32-a, the City is authorized to issue rules governing City regulated developments. These rules are set forth in Rules of the City of New York Department of Housing Preservation and Development (28 RCNY) chapter 3. Under 28 RCNY 3-02 (h) (8), City regulated Mitchell-Lama developments, such as West Village, must, after initial occupancies, maintain waiting lists both for current tenants who apply for a different apartment and for nontenants who apply for an apartment, and consent to the transfer of apartments only to qualified persons in accordance with their position on the lists. Updated copies of such lists are to be filed periodically with HPD. Among the documents sought by Thomas are the West Village waiting lists.
On or about October 1996, Thomas applied for a different apartment and was placed on the waiting list. A tenancy in a Mitchell-Lama development is of enormous value both because rent, being regulated, is far below rents for comparable available apartments, and because where the apartment is a cooperative, or to become a cooperative, the occupant of such apartment may have an opportunity for a sizeable capital gain should the building elect to disengage from the Mitchell-Lama program. Allocating these benefits through waiting lists, as HPD requires, is designed to provide a fair method of selecting the beneficia *549 ries of this program and minimize the opportunity for improper allocation of this scarce public resource through bribery, nepotism, politics, racism, favoritism or other improper means.
While RCNY requires apartments in already constructed Mitchell-Lama developments to be allocated through a waiting list, it does not mean that temptations to improperly circumvent such lists disappear, and there have been cases where such improper acts have occurred.
Here, Thomas, who has been on the waiting list for eight years, alleges that she has reason to believe, based on observed events, unmet promises, hearsay and rumor that waiting list priorities have not been observed at West Village. If indeed such is the case, she may well have been or will be deprived of the opportunity to obtain an apartment, a better apartment, or a financial benefit, by reason of a future cooperative conversion. To investigate whether her suspicions have a basis, she sought disclosure of the waiting lists and other matters to determine whether available apartments were properly assigned in accordance with RCNY rules.
On or about June 10, 2005, Thomas submitted a written request to HPD, seeking copies of the waiting lists, including names and addresses of people on lists of both existing tenants and outside applicants, and those people who moved into an apartment at West Village or received a new lease at West Village from January 1, 1995 to the present. Thomas also requested any records relating to prior investigations and litigation involving waiting lists at West Village.
HPD responded to Thomas’ request on July 19, 2005, denying her access to four or five categories of records sought on the grounds that they were specifically exempted by statute, citing Public Officers Law § 87 (2) (a), and on grounds that disclosure of the record would constitute an unwarranted invasion of privacy, citing Public Officers Law § 87 (2) (b). Public Officers Law § 87 (2) (a) exempts from disclosure records that “are specifically exempted from disclosure by state or federal statute.” HPD claims Public Housing Law § 159 is such a statute. No further explanation was provided. The RAO offered to make four pages of the records available, on payment of a photocopying fee, advising Thomas that she could appeal the decision in writing within 30 days. Thomas paid the fee and received the four pages of documents.
Thomas submitted a timely appeal on August 1, 2005. On August 9, 2005, the records access appeals officer denied her ap *550 peal, relying on Public Officers Law § 87 (2) (a) and Public Housing Law § 159, which states, in part, that records subject to such statute are for the exclusive use of that authority and shall not be opened to the public. The records access appeals officer also denied access under Public Officers Law § 87 (2) (b) stating that the disclosure of such documents would constitute an unwarranted invasion of personal privacy because residency for these apartments is based upon income and disclosure would identify the names and their “probable” income levels.
Conclusions of Law
Public Officers Law §§ 87 and 89 are a part of article 6 of the Public Officers Law which is “known and may be cited as the ‘Freedom of Information Law [FOIL].’ ” (Public Officers Law § 85.) FOIL is based on the findings of the New York Legislature that
“a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.
“As state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.
“The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to the determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.
“The legislature therefore declares that government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article.” (Public Officers Law § 84.)
The courts are in full accord: “the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government.” (Matter of Federation of N.Y. State *551 Rifle & Pistol Clubs v New York City Police Dept., 73 NY2d 92, 95 [1989], quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979].) FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government. (Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564 [1984]; Fink v Lefkowitz, supra at 571.)
HPD is covered by FOIL as a “municipal department.” (Public Officers Law § 86 [3].) Accordingly, the waiting list, which is a record in HPD’s custody, is covered by FOIL. While FOIL does permit certain excepted records to be withheld from a FOIL request, the Legislature, being concerned with what it assumed to be the natural tendency of a bureaucracy to resist disclosure, expressly authorizes a person who believed that a proper FOIL request was denied to challenge a denial through a CPLR article 78 proceeding. (Public Officers Law § 89 [5] [d].) Thus, this court need not further consider whether this petition has properly come within the otherwise narrow confines of article 78 to challenge HPD’s decision before this court. Where a person denied access to a record brings an article 78 proceeding, “the agency involved shall have the burden of proving that such record falls within the” statutory definitions of exempt records. (Public Officers Law § 89 [4] [b].) Exemptions must be given their natural and obvious meaning where such interpretation is consistent with the legislative intent and the general purpose and policy underlying FOIL. (Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246 [1987].)
HPD’s initial claim that disclosure is foreclosed under Public Officers Law § 87 (2) (a) by reason of the applicability of Public Housing Law § 159 is specious. Public Housing Law § 159 exempts from disclosure information acquired from tenants or applicants for dwellings in projects of a municipality or an authority or from their relatives. Under Public Housing Law § 3 (14), however, a “project” is defined only to include buildings “owned, constructed, managed or operated” under the Public Housing Law, i.e., public housing projects. Thus, Public Housing Law § 159 does not apply to Mitchell-Lama projects such as West Village.
HPD’s second ground for denial of access to waiting lists and other records is based on Public Officers Law § 87 (2) (b), viz., that disclosure would constitute an unwarranted invasion of privacy because names and addresses on the list would have to *552 be disclosed.[1] HPD argues that because residency in a Mitchell-Lama apartment is based in part upon certain income thresholds, disclosure of the names of residents is “in essence” a disclosure of that person’s household income, and that “disclosure of these waiting lists would indicate their probable income levels, and would thus constitute an unwarranted invasion of personal privacy.” Although not stated in their denial of Thomas’ request, HPD also now argues that Thomas “may try to contact these individuals by telephone or by simply knocking on their doors to ascertain whether they appropriately obtained their apartments.” (Respondent’s verified answer at 13.)
The balance between FOIL rights and privacy was set by the Legislature in the Public Officers Law. Section 96 (1) (a portion of Public Officers Law article 6-A, known as the “Personal Privacy Protection Law”) forbids the disclosure by an agency of “any record or personal information unless such disclosure is ...(c) subject to disclosure under article six of this chapter [FOIL], unless disclosure of such information would constitute an unwarranted invasion of personal privacy as defined in paragraph (a) of subdivision two of section eighty-nine of this chapter.”
Public Officers Law § 89 (2) (b) in turn provides that:
“An unwarranted invasion of personal privacy includes, but shall not be limited to:
“i. disclosure of employment, medical or credit histories or personal references of applicants for employment;
“ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;
“iii. sale or release of lists of names and addresses if such lists would be used for commercial or fund-raising purposes;
“iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it; or
*553 “v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of the agency.”
HPD argues that this provision provides an express basis for its decision to withhold the information sought. While the examples in Public Officers Law § 89 (2) (b) are not to be exhaustive, they are illustrative of what type of “unwarranted invasion” the statute contemplated. Thus, even if information on the waiting lists was to disclose the approximate income of persons on the list, such income is not of the painfully personal type information expressly excluded from disclosure by Public Officers Law § 89 (2) (b). Applying the rule of ejusdem generis, HPD’s positions is rejected. Ejusdem generis is to be used in the interpretation of New York statutes in the absence of express legislative purpose or intent to the contrary. (McKinney’s Cons Laws of NY, Book 1, Statutes § 239.) HPD, which under Public Officers Law § 89 (4) (b) has the burden of proving its refusal to disclose falls within the statutory definition, has thus, in no way, met its burden.
As a general rule, privacy can be measured by what would be offensive and objectionable to a reasonable person of ordinary sensibilities, and the determination requires balancing competing interests of public access and individual privacy. (Matter of Empire Realty Corp. v New York State Div. of Lottery, 230 AD2d 270 [1997].) Thus, medical records (Matter of Huston v Turkel, 236 AD2d 283 [1st Dept 1997]), employment records (Matter of Hanig v State of N.Y. Dept, of Motor Vehs., 79 NY2d 106 [1992]), tax records (Matter of Comps, Inc. v Town of Huntington, 269 AD2d 446 [2d Dept 2000]), Social Security numbers (Matter of Seelig v Sielaff, 201 AD2d 298 [1st Dept 1994]), and names of undercover police officers (Matter of Sanders v Bratton, 278 AD2d 10 [1st Dept 2000]) are some examples of these types of exemptions. HPD’s makeweight arguments that it need not disclose the waiting list under RCNY rules because these rules only mandate that the West Village’s management is required to disclose the waiting list to persons such as Thomas concedes that persons on the waiting list are required to surrender any expectation of privacy by placing their names on such list. That Thomas has proceeded against HPD to obtain the waiting lists under FOIL rather than seeking them from the management of West Village makes no difference. It is no more than a quibble to suggest that under such circumstance HPD’s denial of disclosure is “protective” of the privacy of those on the waiting list.
*554 Lists of names and addresses of certain groups of people have regularly been held to be subject to disclosure under FOIL. (See Matter of New York Teachers Pension Assn. v Teachers’ Retirement Sys. of City of NY., 71 AD2d 250 [1st Dept 1979] [retired teachers]; Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575 [1980] [records of fire department]; American Broadcasting Cos. v Siebert, 110 Misc 2d 744 [Sup Ct, NY County 1981] [licensed check cashers].)
HPD’s claim that release of the names “might” reveal the income of applicants is speculative. Further, as evident from the “redacted” waiting list proffered by HPD in its reply, financial resources are not part of the information on the waiting list. Additionally, financial resources of an applicant are not relevant to being placed on these lists; eligibility, for which financial resources are relevant, is only determined at the time an apartment is offered. While eligibility may be conditional on not exceeding a certain maximum family income, such income standard varies widely and is dependant on the apartment rent, the size of family and certain exclusions from income, making it virtually impossible to determine with any accuracy the income of a qualified applicant by the applicant’s mere presence on a list or even the fact of an applicant being awarded an apartment.[2] (28 RCNY 3-02 [h] [2] [iii].) This claim to support denial cannot be sustained and is therefore rejected.
HPD’s claim that Thomas may “knock on doors” is also not a proper exercise to deny disclosure as well as being wholly speculative. The release of records under FOIL is to be determined without regard to the use for which such information is sought. (Matter of Corwin Solomon & Tanenbaum v New York State Div. of Lottery, 239 AD2d 763 [3d Dept 1997].) To the extent there may be improper use of disclosed information, the remedy is to seek redress for such improper use, not to impose a prior restraint on the disclosure, except in the case where the lists would be used for commercial or fund raising purposes. (Public Officers Law § 89 [2] [b] [iii].) There is neither allegation nor any basis in the record to believe that Thomas sought the lists for such purpose.
HPD’s attempts to construe FOIL provisions to avoid disclosing the information further expressly contradicts express provi *555 sions of 28 RCNY chapter 3, which, being promulgated pursuant to state law authority under the Private Housing Finance Law, have the full force of law. RCNY expressly provides that “[t]he waiting list shall be printed in a legible manner and shall be available for inspection by members of the Board of Directors, members of the Tenants Association, residents of the development, city officials and applicants.” (28 RCNY 3-02 [h] [10].) Thomas, as both a resident and an applicant, is therefore expressly entitled to obtain a copy of the lists. The provision is clear. The waiting list is the waiting list, and not a redacted list as HPD belatedly asserts. HPD has not only failed to meet its burden under either section 87 (2) (a) or (b) to warrant denial of disclosure, but its position is in clear violation of these RCNY provisions.
The policy inherent in the RCNY provisions clearly recognizes the potential for improper allocation of apartments and seeks to allow sunlight to disinfect the pestilence of possible corruption, whether by those managing the project or by those involved in oversight at HPD. While the record at this point only reflects Thomas’ suspicions, rather than proof of any malfeasance by HPD, the building management or anyone else, placing further barriers to access to these lists would contravene this strong policy.
Although HPD has a primary responsibility to oversee the conformity by management with waiting list rules, RCNY provides an independent path for HPD’s oversight to be subject to review by one or more tenants of their organizations, who may independently protect their rights, deter malfeasance and advance the public policies inherent in the Private Housing Finance Law.
Another HPD defense to disclosure cites two advisory opinions of the New York State Committee on Open Government. This committee, which was “continued” under Public Officers Law § 89 (1) (a), is authorized to establish disclosure guidelines and to render advisory opinions on FOIL issues to any agency or person. (Public Officers Law § 89 [1] [b] [i], [ii].)
The first cited opinion, issued on June 29, 1995, relates to an application by a father of two residents of Champion Apartments in West Carthage, to obtain “copies of their applications for housing and also how much their rent is and who is paying it.” (1995 Ops Comm on Open Govt No. 8938, at 1.) The committee opined that no disclosure was required, citing Public Housing Law § 159, indicating that Champion Apartments were *556 public housing. As noted above, Public Housing Law § 159 is inapplicable to Mitchell-Lama developments.
The second opinion, issued on April 8, 1998, relates to an inquiry from a resident of “an affordable housing complex” in Montebello, New York (1998 Ops Comm on Open Govt No. 10747, at 1). The opinion does not indicate whether the “complex” is public housing, a Mitchell-Lama development or financed or built under any other provision of the Private Housing Finance Law or other law. As Public Housing Law § 159 is not cited (as it was in the June 29, 1995 case cited above), it may be assumed that the committee recognized the nonapplicability of Public Housing Law § 159 to developments which were not subject to the Public Housing Law. This opinion, while bereft of specific authority, addresses the issue through analogy. The opinion’s conclusion, however, is telling: “[I]f indeed there is an income qualification and only those persons whose income is below a certain level are identified on the list of your interest, I would agree with the Village ...” not to disclose. In fact, here, the waiting list itself, as shown by the exhibit to HPD’s reply, contains no income information, and there is no income requirement to be placed on the list. Similarly, ascertaining the income of tenants, merely by reason of tenancy, cannot be done.
More important to the value of this opinion, as authority here, is that such opinion acknowledges that it is merely an opinion of the committee’s staff as to what a court might do in the absence of statutory, regulatory or case law guidance, to balance the competing statutory directives of disclosure and privacy. Here, that policy balance dividing line has been set by RCNY where disclosure of the items sought by Thomas is mandated. In light of such RCNY provisions, adopted under the authority of state law, neither the committee nor this court could find the waiting list protected from disclosure without finding that the balance of the competing interests set in RCNY was not in accordance with law. HPD proffers to this court no basis to reach such result and this court finds no independent basis to so find. While the committee’s interpretations of FOIL, “if not irrational or unreasonable, should be upheld” (Matter of Miracle Mile Assoc. v Yudelson, 68 AD2d 176, 181 [4th Dept 1979]), such interpretations must be relevant to the matters at hand. As the cited opinion relates, at most, to disclosure of lists outside of the City of New York, where RCNY does not apply, it is irrelevant to this case where RCNY does apply.
Finally, HPD asserts that their determination should be upheld because the CPLR article 78 standards to be applied here *557 should uphold the HPD administrative decision to deny Thomas the material she has sohght by deferring to the discretion of an administrative body in rendering its decisions, and may only undo such decisions in the event that the agency had no reasonable basis for reaching its conclusions. HPD would be unquestionably correct in its position were this proceeding an ordinary proceeding under article 78 in accordance with the provisions of such article. However, such is not the case. Public Officers Law § 89 (4) (b) expressly modifies the ordinarily restrictive nature of an article 78 proceeding by specifically providing that in an article 78 proceeding brought to enforce FOIL rights, “the agency involved shall have the burden of proving that such record” is statutorily exempt from disclosure. (Public Officers Law § 89 [4] [b].) As this provision is specific, principles of New York statutory interpretation requires it to supercede the general rule applicable to other article 78 proceedings, and cases interpreting them. Further, as such provision of Public Officers Law was added when FOIL was enacted by chapter 933 of the Laws of 1979, long after the adoption of CPLR article 78, by adding the language, the Legislature is presumed to have intended to expand the scope of a court’s inquiry under article 78 for FOIL cases. Contending that such language does not constitute an intent to expand the article 78 standard for review of a FOIL matter makes such statutory language surplusage. Principles of New York statutory construction require this court to reject HPD’s argument on the standard of review to be accorded their action in rejecting Thomas’ FOIL request as statutory provisions may not be construed as superfluous when it is practical to give them a meaning. (See, McKinney’s Statutes § 233.)
Thomas’ request for attorney’s fees and costs is granted. A court may, in its discretion, assess such fees against an agency where a petitioner substantially prevails, and the court finds that the record was of “clearly significant interest to the general public; and . . . the agency lacked a reasonable basis in law for withholding the record.” (Public Officers Law § 89 [4] [c] [i], [ii].) This court finds that these standards have been met, and that, after full consideration of this matter and the positions of the litigants and the interest of justice, this court finds that in its discretion it is appropriate to award counsel fees and costs.
Under this decision, Thomas’ application for an apartment has clearly prevailed. Further, the dispute involves more than one apartment in one project. It involves serious issues of al *558 leged possible widespread misconduct in the administration of the City’s publicly aided housing program, and not just an inquiry concerning a decision on Thomas’ application. To the extent such misconduct exists, not only would many citizens on this waiting list, which seems to take over eight years to move, be adversely affected, but the integrity of the system of publicly aided housing would suffer which in turn may well affect whether the public will support shrinking, maintaining or expanding these housing programs.
HPD is hereby ordered, within 30 days of notice of entry of this decision and order, to provide Thomas with the unredacted records that were requested in items 1 through 4 of her June 10, 2005 FOIL request.

. HPD subsequently, in its answering papers, provided the waiting list with names and addresses redacted. However, a review of this “disclosure” shows such redacted disclosure to be a farce under the thrust of FOIL. After everything is crossed out, the remaining document constitutes little more than the form of the waiting list. There is no informational content.

. Similarly, being a resident of a Mitchell-Lama apartment hardly proves what the specific or maximum income of a tenant may be. Over-income tenants may effectively stay forever provided they pay the maximum surcharge. (28 RCNY 3-03.)