89 N.Y.2d 267 (1996)
675 N.E.2d 808
653 N.Y.S.2d 54
In the Matter of Khalib Gould, Appellant,
v.
New York City Police Department et al., Respondents.
In the Matter of Harold Scott, Appellant,
v.
New York City Police Department, Respondent.
In the Matter of Joseph F. DeFelice ex rel. on Behalf of Christopher Barbera, Appellant,
v.
New York City Police Department, Respondent.
Court of Appeals of the State of New York.
Argued October 10, 1996
Decided November 26, 1996.
Rosemary Herbert, New York City, E. Joshua Rosenkranz and Richard M. Greenberg for appellant in the first above-entitled proceeding.
Steven B. Wasserman, New York City, Robert M. Baum, Daniel L. Greenberg and Laura R. Johnson for appellant in the second above-entitled proceeding.
Joseph F. DeFelice, Kew Gardens, appellant pro se in the third above-entitled proceeding.
Paul A. Crotty, Corporation Counsel of New York City (Margaret G. King and Barry P. Schwartz of counsel), for respondent in the first, second and third above-entitled proceedings.
Robert M. Baum, New York City, Steven B. Wasserman and Laura R. Johnson for Legal Aid Society, amicus curiae in the first above-entitled proceeding.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (Roseann B. MacKechnie, Virginia C. Modest and Thomas M. Ross of counsel), for New York State District Attorneys Association, amicus curiae in the first, second and third above-entitled proceedings.
Chief Judge KAYE and Judges SIMONS, TITONE, SMITH and LEVINE concur with Judge CIPARICK; Judge BELLACOSA dissents and votes to affirm in a separate opinion.
Chief Judge KAYE and Judges SIMONS, TITONE, SMITH and LEVINE concur with Judge CIPARICK; Judge BELLACOSA dissents in part and votes to affirm in a separate opinion.
*272 CIPARICK, J.
The three separate proceedings on appeal all involve petitioners' efforts, pursuant to the Freedom of Information Law (FOIL), to obtain documents relating to their arrests from the New York City Police Department. In response to petitioners' FOIL requests, the Police Department furnished assorted documents to petitioners, but refused to disclose complaint *273 follow-up reports (commonly referred to as DD5's) and police activity logs (commonly referred to as memo books). We hold that the complaint follow-up reports are not categorically exempt from disclosure as intra-agency material and that the activity logs are agency records subject to the provisions of FOIL. Consequently, we remit these proceedings to Supreme Court to determine whether the Police Department can make a particularized showing that a statutory exemption applies to justify nondisclosure of the requested documents.

I.
In Matter of Gould, attorneys for petitioner Khalib Gould submitted a FOIL request to the Police Department for all documents pertaining to his arrest and the related police investigation leading to his conviction for murder in the second degree and attempted murder in the second degree. In response, the Police Department furnished arrest, complaint and ballistic reports to Gould, but withheld complaint follow-up reports on the ground that the reports are exempt from FOIL production as intra-agency material and withheld police activity logs on the ground that the logs are the officers' personal property. Gould instituted a CPLR article 78 proceeding challenging the Police Department's decision, which was dismissed by Supreme Court. The Appellate Division unanimously affirmed.
In Matter of DeFelice, petitioner Christopher Barbera, through his attorney, requested police reports relating to his 1993 arrest that led to his conviction for attempted murder in the second degree and assault in the first degree. The Police Department provided Barbera with complaint reports, property vouchers, and arrest reports, but refused to produce the requested complaint follow-up reports and activity logs. On Barbera's CPLR article 78 challenge, Supreme Court upheld the Police Department's action, finding that the complaint follow-up reports and activity logs are exempt intra-agency material. The Appellate Division unanimously affirmed.
In Matter of Scott, petitioner Harold Scott, in a series of FOIL requests, sought Police Department documents relating to his 1983 arrest and subsequent conviction for rape and homicide. In response to the latest of these requests, the Police Department refused to produce police activity logs and interviews of witnesses who had testified at Scott's criminal trial on the ground that the documents are exempt from disclosure under FOIL and further informed Scott that all *274 other responsive documents had been provided to him in response to prior FOIL requests. On Scott's subsequent CPLR article 78 challenge, Supreme Court upheld the Police Department's refusal to produce the activity logs, but ordered the Department to disclose the interview reports. As to Scott's request for additional documents which the Police Department certified it did not possess, Supreme Court denied the petition concluding that Scott only speculated that these documents existed. On Scott's appeal, the Appellate Division unanimously affirmed, holding that police activity logs are exempt intra-agency material and that the Police Department's certification sufficed to establish the nonexistence of other records. This Court granted leave to appeal in all three proceedings.

II.
To promote open government and public accountability, the FOIL imposes a broad duty on government to make its records available to the public (see, Public Officers Law § 84 [legislative declaration]). Moreover, access to government records does not depend on the purpose for which the records are sought. We recognize that petitioners seek documents relating to their own criminal proceedings, and that disclosure of such documents is governed generally by CPL article 240 as well as the Rosario and Brady rules. However, insofar as the Criminal Procedure Law does not specifically preclude defendants from seeking these documents under FOIL, we cannot read such a categorical limitation into the statute (see, Public Officers Law § 87 [2] [a]; accord, Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 N.Y.2d 75, 81 [absent an express provision or unequivocal legislative intent so indicating, CPLR article 31  the civil litigation disclosure article  is not a statute specifically exempting public records from disclosure under FOIL]).[1]
All government records are thus presumptively open for public inspection and copying unless they fall within one of *275 the enumerated exemptions of Public Officers Law § 87 (2). To ensure maximum access to government documents, the "exemptions are to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption" (Matter of Hanig v State of New York Dept. of Motor Vehicles, 79 N.Y.2d 106, 109; see, Public Officers Law § 89 [4] [b]). As this Court has stated, "[o]nly where the material requested falls squarely within the ambit of one of these statutory exemptions may disclosure be with-held" (Matter of Fink v Lefkowitz, 47 N.Y.2d 567, 571).
In keeping with these settled principles, blanket exemptions for particular types of documents are inimical to FOIL's policy of open government (accord, Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 N.Y.2d 562, 569). Instead, to invoke one of the exemptions of section 87 (2), the agency must articulate "particularized and specific justification" for not disclosing requested documents (Matter of Fink v Lefkowitz, supra, 47 NY2d, at 571). If the court is unable to determine whether withheld documents fall entirely within the scope of the asserted exemption, it should conduct an in camera inspection of representative documents and order disclosure of all nonexempt, appropriately redacted material (see, Matter of Xerox Corp. v Town of Webster, 65 N.Y.2d 131, 133; Matter of Farbman & Sons v New York City Health & Hosps. Corp., supra, 62 NY2d, at 83).
Despite these principles, the courts below relied on the case of Matter of Scott v Chief Med. Examiner of City of N. Y. (179 AD2d 443, lv denied 79 N.Y.2d 758, cert denied 506 US 891) as establishing a blanket exemption from FOIL disclosure for complaint follow-up reports and police activity logs. We conclude that this was error and hold, first, that the complaint follow-up reports are not entitled to a blanket exemption as intra-agency material, and, second, that the police activity logs are agency "records" available under FOIL. In addition, we hold that the Police Department adequately established the nonexistence of other documents requested by petitioner Scott. Accordingly, we reverse in Gould and DeFelice, modify in Scott, and remit in all three proceedings for Supreme Court to determine, upon an in camera inspection if necessary, whether the Police Department can make a particularized showing that any claimed exemption applies.

*276 A.
A complaint follow-up report is a form document on which a police officer "report[s] additional information concerning a previously recorded complaint" (New York City Police Dept Patrol Guide § 108-8). The courts below held that the Police Department properly withheld these reports under the intra-agency exemption, which provides that an "agency may deny access to records or portions thereof that: * * * are inter-agency or intra-agency materials which are not: i. statistical or factual tabulations or data; ii. instructions to staff that affect the public; iii. final agency policy or determinations; or iv. external audits" (Public Officers Law § 87 [2] [g]). Petitioners contend that because the complaint follow-up reports contain factual data, the exemption does not justify complete nondisclosure of the reports. We agree.
Initially, we note that one court has suggested that complaint follow-up reports are exempt from disclosure because they constitute nonfinal intra-agency material, irrespective of whether the information contained in the reports is "factual data" (see, Matter of Scott v Chief Med. Examiner of City of N. Y., 179 AD2d 443, 444, supra [citing Public Officers Law § 87 (2) (g) (iii)]). However, under a plain reading of section 87 (2) (g), the exemption for intra-agency material does not apply as long as the material falls within any one of the provision's four enumerated exceptions. Thus, intra-agency documents that contain "statistical or factual tabulations or data" are subject to FOIL disclosure, whether or not embodied in a final agency policy or determination (see, Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 N.Y.2d 75, 83, supra; Matter of MacRae v Dolce, 130 AD2d 577).
The question before us, then, is whether the complaint follow-up reports contain "factual data." Although the term "factual data" is not defined by statute, the meaning of the term can be discerned from the purpose underlying the intra-agency exemption, which is "`to protect the deliberative process of the government by ensuring that persons in an advisory role [will] be able to express their opinions freely to agency decision makers'" (Matter of Xerox Corp. v Town of Webster, 65 N.Y.2d 131, 132 [quoting Matter of Sea Crest Constr. Corp. v Stubing, 82 AD2d 546, 549]). Consistent with this limited aim to safeguard internal government consultations and deliberations, the exemption does not apply when the requested material consists of "statistical or factual tabulations or data" (Public Officers Law § 87 [2] [g] [i]). *277 Factual data, therefore, simply means objective information, in contrast to opinions, ideas, or advice exchanged as part of the consultative or deliberative process of government decision making (see, Matter of Johnson Newspaper Corp. v Stainkamp, 94 AD2d 825, 827, mod on other grounds 61 N.Y.2d 958; Matter of Miracle Mile Assocs. v Yudelson, 68 AD2d 176, 181-182).
Against this backdrop, we conclude that the complaint follow-up reports contain substantial factual information available pursuant to the provisions of FOIL. Sections of the report are devoted to such purely factual data as: the names, addresses, and physical descriptions of crime victims, witnesses, and perpetrators; a checklist that indicates whether the victims and witnesses have been interviewed and shown photos, whether crime scenes have been photographed and dusted for fingerprints, and whether neighborhood residents have been canvassed for information; and a blank space denominated "details" in which the officer records the particulars of any action taken in connection with the investigation.
However, the Police Department argues that any witness statements contained in the reports, in particular, are not "factual" because there is no assurance of the statements' accuracy and reliability. We decline to read such a reliability requirement into the phrase "factual data," as the dissent would have us do, and conclude that a witness statement constitutes factual data insofar as it embodies a factual account of the witness's observations. Such a statement, moreover, is far removed from the type of internal government exchange sought to be protected by the intra-agency exemption (see, Matter of Ingram v Axelrod, 90 AD2d 568, 569 [ambulance records, list of interviews, and reports of interviews available under FOIL as "factual data"]). By contrast, any impressions, recommendations, or opinions recorded in the complaint follow-up report would not constitute factual data and would be exempt from disclosure. The holding herein is only that these reports are not categorically exempt as intra-agency material. Indeed, the Police Department is entitled to withhold complaint follow-up reports, or specific portions thereof, under any other applicable exemption, such as the law-enforcement exemption or the public-safety exemption, as long as the requisite particularized showing is made. In this connection, we are well aware that an indeterminate amount of data collected during a criminal investigation may find its way into police files regardless of whether it ultimately proves to be reliable, credible, *278 or relevant. Disclosure of such documents could potentially endanger the safety of witnesses, invade personal rights, and expose confidential information of nonroutine police procedures. The statutory exemptions contained in the Public Officers Law, however, strike a balance between the public's right to open government and the inherent risks carried by disclosure of police files (see, e.g., Public Officers Law § 87 [2] [b], [e], [f]).

B.
We next address the Police Department's refusal to disclose police activity logs. The Police Department, which is indisputably an "agency" for FOIL purposes (see, Public Officers Law § 86 [3]), contends that the activity logs are the officers' personal property and, therefore, not agency "records." We disagree. Because the activity logs contain "information kept [or] held * * * for an agency," they are "records" available under FOIL (Public Officers Law § 86 [4]).[2]
Activity logs are the leather-bound books in which officers record all their work-related activities, including assignments received, tasks performed, and information relating to suspected violations of law. Significantly, the Police Department issues activity logs to all its officers, who are required to maintain these memo books in the course of their regular duties and to store the completed books in their lockers; the officers are obligated to surrender the activity logs to superiors for inspection upon request; and the contents of the logs are meticulously prescribed by departmental regulation (accord, Matter of Washington Post Co. v New York State Ins. Dept., 61 N.Y.2d 557, 564-565 [minutes of meetings of private insurance companies, required by regulation and turned over to Insurance Department for inspection, are "records" under FOIL]). Thus, although the officers generally maintain physical possession of the activity logs, they are nevertheless "kept [or] held" by the officers for the Police Department, which places these *279 documents squarely within the statutory definition of "records" (see, Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 N.Y.2d 410, 417). Subject to any applicable exemption and upon payment of the appropriate fee (see, Public Officers Law § 87 [1] [b] [iii]), the activity logs are agency records available under the provisions of FOIL.

C.
Supreme Court did not abuse its discretion in concluding that the Police Department adequately established the nonexistence of additional records requested by petitioner Scott. Once the records access officer for the Police Department certified to Supreme Court that the Police Department had provided Scott with all responsive documents in its possession, Scott was required to articulate a demonstrable factual basis to support his contention that the requested documents existed and were within the Police Department's control (see, Matter of Calvin K. v De Francesco, 200 AD2d 619; Matter of Ahlers v Dillon, 143 AD2d 225, 226). Scott's conjecture that the documents existed some 10 years ago was insufficient to warrant a hearing on the issue.
Finally, we note the Police Department's argument and the dissent's concern that the requests serve not the underlying purposes of FOIL, but the quite different private interests of petitioners in obtaining documents bearing on their cases and will produce an enormous administrative burden. This argument, however, is unavailing as the statutory language imposes a broad duty to make certain records publicly available irrespective of the private interests and the attendant burdens involved. Should the Legislature see fit to do so, it might, as the dissent suggests, amend the statute to balance the rights accorded.
Accordingly, the order in Gould should be reversed, with costs, the order in DeFelice should be reversed, with costs, and the order in Scott should be modified, without costs, and, as so modified, affirmed, and all three proceedings remitted to Supreme Court for further proceedings in accordance with the opinion herein.
BELLACOSA, J. (dissenting).
The Freedom of Information Law (FOIL) (Public Officers Law § 84 et seq.) and this Court's implementing and interpretive precedents (see, e.g., Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 N.Y.2d 410; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 N.Y.2d 562; *280 Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 N.Y.2d 75) combine to produce an unintended and anomalous set of results in these cases (see, New York State Bankers Assn. v Albright, 38 N.Y.2d 430, 438; Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 675).
The net practical result is a super-discovery tool affecting criminal proceedings by overarching application of FOIL. This overshadows this Court's many specific precedents governing disclosure in criminal proceedings and the specific, calibrated remedies of the CPL (art 240) (see, e.g., People v Mobil Oil Corp., 48 N.Y.2d 192, 200 [general statutory provisions apply only where particularized statutory provisions do not]; McKinney's Cons Laws of NY, Book 1, Statutes § 238). It also evokes serious concern that systemic overload and inordinate delays in police departments and courts will result. Occasional FOIL efforts are more likely now to be encouraged and pursued as standard operating practice. File-by-file FOIL reviews and evaluations in virtually every criminal case will be the standing orders of the day, with many personnel displaced from other direct-line duties to process and evaluate eligibility, compliance, confidentiality, privilege, safety, security, and redactions galore in connection with massive document turnovers. The validation of this new staple of discovery is not within FOIL's purpose and contemplated effectuation, though the acronym forecasts an ironic set of consequences.
For these reasons and with the shared hope that legislative attention will be alerted promptly to restore, at least prospectively, a fair and sensible balance of proportionate rights in this discovery field, I respectfully dissent and vote to affirm.
The fundamental policy underlying FOIL is the "people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations" made by government (Public Officers Law § 84 [emphasis added]). The focus of this fresh and open air reform is to provide the public with access to the same information used by public officials to arrive at official "determinations." This statutory focus should be key in interpreting the inter-agency exemption contained in Public Officers Law § 87 (2) (g) as applied to these cases.
The petitioners here argue that criminal complaint follow-up reports (DD5's) and the personal memo books of individual police officers are subject to and not exempt from FOIL because *281 they are "statistical or factual tabulations or data" (see, Public Officers Law § 87 [2] [g] [i]). This proffered interpretation fails to consider this subsection of the statute in its particular context and full import (New York State Bankers Assn. v Albright, 38 N.Y.2d 430, 436-438, supra). Public Officers Law § 87 (2) (g) additionally subjects three other categories of inter-agency materials to disclosure: instructions to staff that affect the public, final agency policy or determinations, and external audits. Thus, this subsection focuses on subjecting to disclosure only those internal agency documents which pertain to official actions affecting the public generally. This limitation is further understood by reference to other subsections of the statute specifically exempting evidence compiled for law enforcement purposes in certain circumstances and where disclosure would risk life or safety (see, Public Officers Law § 87 [2] [e], [f]).
The latter specifications are markedly different from those here. The contents of investigatory files which contain raw information gathered for the purposes of criminal investigation, and potentially prosecution, do not constitute the type of information upon which official determinations and actions are taken in the context framed and intended by FOIL. Raw evidence acquired by the police has not been "tabulated," or processed, but simply recorded. As such, it has not been filtered or subjected to any analysis, verification or protective shielding by the relevant agency under specific regulatory guidelines.
This Court, in effect, shifts the emphasis of FOIL so that it will functionally eclipse the nuanced procedural safeguards governing disclosure in criminal matters, as such. This is done with no evidence that the Legislature ever contemplated by language or history this significant joint availability.
Matter of Farbman & Sons v New York City Health & Hosps. Corp. (62 N.Y.2d 75, supra) need not be applied so inexorably and extended in this fashion. In Farbman, this Court held that records which were subject to disclosure under FOIL could not be withheld merely because the requestor was a civil litigant against the agency, and rejected a blanket exemption from FOIL based on CPLR article 31 (id., at 78, 80-81). That holding relied on especially the fact that "`the standing of one who seeks access to records under the Freedom of Information Law is as a member of the public, and neither enhanced * * * nor restricted * * * because he is also a litigant or potential litigant'" (id., at 82, quoting Matter of John P. v Whalen, 54 N.Y.2d 89, 99 [citations omitted]).
*282 In these cases, the official respondents do not seek exemption from FOIL because the petitioners are defendants in criminal proceedings, but because of the interagency nature of the requested documents themselves (DD5's and officers' memo books). Interestingly and perhaps ironically, the rule of this case should entitle victims, and others, to disclosure of these same materials under a fair-game-for-all application of these enhanced FOIL principles. That may well multiply the administrative difficulty and, perhaps, even impossibility of compliance.
Substantial public policy considerations underlie the encouragement of and incentives for members of the community to be forthcoming with information serving the investigation of criminal activity and the apprehension and prosecution of criminals. Accurate and complete recordkeeping by officers is also important. Granting general access to raw observations, suppositions, notations and opinions, as in these cases, cannot well serve those overriding objectives in the criminal jurisprudence arena.
Thus, I vote to affirm in each case.
In Matter of Gould v New York City Police Dept. and Matter of DeFelice v New York City Police Dept.: Order reversed, with costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.
In Matter of Scott v New York City Police Dept.: Order modified, without costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[1] The dissent reads Farbman to stand primarily for the proposition that an individual's status as a litigant in an action against a governmental entity does not preclude reliance on FOIL. Although the Court did make this important point in Farbman, the Court also concluded, as an independent ground of decision, that "[g]iven FOIL's purpose, its broad implementing language, and the narrowness of its exemptions, [CPLR] article 31 cannot be read as a blanket exception from its reach. * * * Nowhere in FOIL * * * is there specific reference to records already subject to production under article 31, and no provision of FOIL bars simultaneous use of both statutes" (62 NY2d, at 81). Because CPL article 240 likewise fails to specifically exempt criminal-disclosure documents from FOIL, we are, just as in Farbman, not free to disregard the open-government mandate of FOIL based on what is perceived as some generalized tension between FOIL and a distinct statutory disclosure scheme.
[2] Although it was suggested in the courts below that police activity logs could be withheld under the privacy and intra-agency exemptions (see, Public Officers Law § 87 [2] [b], [g]), the Police Department does not advance these positions on appeal. Neither does the Police Department make the argument that all documents relating to law enforcement are categorically exempt from FOIL. Indeed, the Police Department acknowledges that it routinely discloses law-enforcement documents pursuant to FOIL requests, which is evidenced not only by the arrest, complaint, and ballistic reports turned over to petitioners herein, but also by the myriad lower court cases evaluating whether the Police Department justifiably withheld particular law-enforcement documents requested under FOIL.