OPINION OF THE COURT
Michael C. Lynch, J.
Petitioner commenced this CPLR article 78 proceeding to challenge respondent’s response to her request for documents in accordance with the Freedom of Information Law (Public Officers Law § 84 et seq. [hereinafter FOIL]). Respondent contends that petitioner is not entitled to the documents because the records are exempt from disclosure.
On December 16, 2008, petitioner’s 21-year-old son John Francis Curry was found in his apartment, the victim of a fatal gunshot wound. On February 13, 2009, the Rensselaer County Medical Examiner determined that John’s death was a homicide.
The petitioner, Ms. Lynch, is John’s mother. On July 21, 2010, petitioner, through her attorney, submitted to respondent’s FOIL officer a request for the following records:
“any and all police reports and/or investigative reports; any and all laboratory results; any and all witness statements and/or interviews; any and all police radio and telephonic communications; any and all videotapes in any way capturing footage of the underlying event(s) in issue; any and all telephonic communications to or from the City of Troy Police Department; police radio transmissions to and from police vehicles and/or portable radios in any way related to the events underlying the above referenced matter; any and all tapes of either any audio and/or video recordings captured from any type of recording device/camera maintained by the City of Troy Police Department either from within police vehicles or at the police department building in any way capturing the events underlying the above referenced complaint; any and all forensic reports and any and all logs of forensic evidence obtained from the place of Mr. Curry’s demise and from his person including the results of gunshot residue; any and all autopsy reports and/or reports prepared by the City of Troy Medical Examiner in connection with the performance of Mr. Curry’s autopsy and post-mortem examination; death certificate; and any and all other records of any kind *176 maintained by the City of Troy relative to the death of Mr. Curry and investigation into same” (petition exhibit A).
When there was no response, petitioner’s attorney wrote again to respondent’s FOIL officer on August 3, 2010, advising that the failure to respond to the July 21, 2010 request violated FOIL (see e.g. Public Officers Law § 89 [3] [a]; petition exhibit B).
On August 9, 2010, respondent’s records access officer denied petitioner’s July 21, 2010 request, “based on the Freedom of Information Law . . . due to the active police investigation” (petition exhibit C).
On August 17, 2010, petitioner’s attorney again wrote to the records access officer, urging him to reconsider his determination. The crux of this reconsideration request was that the investigation was not truly “active,” that any claim that there was an “active” investigation was belied by the statements and conduct of members of the Troy City Police Department, and that the response was improper because it was not specific and particularized (petition exhibit D).
Respondent’s records access officer did not reconsider his determination. On August 27, 2010, petitioner, through her counsel, filed a timely appeal to the August 9, 2010 determination. On September 3, 2010, respondent’s corporation counsel and appeals officer denied the appeal, as follows:
“The unfortunate death of Mr. Curry occurred on or about December 16, 2008. The medical examiner has ruled his death a homicide. The case is open and there is an ongoing investigation. Information gathered during the investigation, if revealed, would compromise the integrity of that investigation. Accordingly, pursuant to Section 87 (2) (e) (i) your appeal is denied upon the grounds that it would interfere[ ] with law enforcement investigations. I am however, authorizing the release of the New York State Incident Report, which does not disclose the particulars of the investigation.”
The instant CPLR article 78 proceeding ensued. Now, petitioner argues that she has a “clear right to information about the investigation into her son’s death” and that “respondent has not provided any justification for its non-disclosure of the information sought by [her] or has provided inconsistent justification for same” (petition 1Í1Í 30, 32). Petitioner’s core *177 complaint is that the Police Department has no basis to withhold the records because it is no longer actively investigating John’s death because they believe he committed suicide.
In order to assess the propriety of the City’s response, the court must be guided by the general principles that (1) every governmental record is presumptively subject to FOIL unless it falls within one of the exceptions set forth in Public Officers Law § 87 (2); (2) the statutory exemptions must be narrowly construed; (3) it is the agency’s burden to demonstrate that one of the statutory exemptions applies; and, (4) disclosure may be withheld only where the material requested “falls squarely within” a statutory exemption (Matter of Gould v New York City Police Dept., 89 NY2d 267, 275 [1996]). The agency’s burden may not be met with a broad allegation that records are exempt from disclosure under any one exemption (Matter of Konigsberg v Coughlin, 68 NY2d 245 [1986]; Matter of Buffalo Broadcasting Co. v New York State Dept. of Correctional Servs., 155 AD2d 106 [1990]). An agency may not deny a FOIL request based either on the reason for the request or the status of the individual making the request (i.e., that the requestor is a litigant or suspect) (see generally Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75 [1984]).
The basic premise of the statute is that “the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). Because it is equally recognized that some documents must remain confidential, the statute includes eight “specific, narrowly constructed instances” where a record may be withheld (id.). But,
“the agency does not have carte blanche to withhold any information it pleases. Rather it is required to articulate particularized and specific justification and, if necessary, submit the requested materials to the court for in camera inspection, to exempt its records from disclosure. Only where the material requested falls squarely within the ambit of one of these statutory exemptions may disclosure be withheld.” (Id. [citation omitted].)
Here, respondent claims that the requested records are exempt from disclosure based on Public Officers Law § 87 (2) (e) (i). This provision permits an agency to withhold a record or records that “are compiled for law enforcement purposes and which, if disclosed, would . . . interfere with law enforcement *178 investigations or judicial proceedings.” Respondent’s Deputy Chief of Police McEvoy avers that “the County Medical Examiner has reported that this death was a homicide and the Troy Police Department must so treat it” (McEvoy affidavit 1Í15). Similarly, he confirms that based on the Medical Examiner’s determination, “it remains an open homicide case” {id. 113).
In response to petitioner’s claim that the investigation is not active, he explains, “active is not an appropriate classification. Because the degree of activity in an investigation is unknown or not apparent to the public does not mean that this is not an open case, the referenced matter is an open case” {id. 118). As to petitioner’s claim that members of the police department have stated to John’s family and their representatives that they believed he committed suicide, McEvoy avers that if the statements were made they were, “unauthorized and premature” {id. 11 16) and that “[t]here was no official statement by the Troy Police Department that the death was a suicide” {id. 1i 17).
McEvoy explains that, generally, “it is possible that a crime which can not be solved this year, with improved technology and resources, may be solved in coming years” {id. 1Í10). Based on this general thesis, McEvoy concludes, “any disclosure of investigation results relative to the death of John Francis Curry would and could prejudice and hamper future investigation and prosecution.” He avers,
“release of the investigation results would harm this case as follows: (a) the perpetrator of a homicide would be aided greatly by release of police department investigation results; (b) the police department would be seriously hampered by release of otherwise unknown details of a homicide, and the police department investigation thereof; (c) the more details of a homicide that are known to the public, the more difficult it is to obtain an arrest and conviction of a suspect,” and “a perpetrator could use the results of the Troy Police Department investigation to avoid detection and conviction” {id. 1119).
In response to Deputy Chief McEvoy’s January 2011 affidavit, petitioner submits her own affidavit as well as affidavits by her daughter, brother and a counselor that had seen John in the past. As relevant to this FOIL application, these affidavits repeat that the Troy Police have never treated John’s case as a *179 homicide, but as a suicide, and that this was confirmed by Deputy Chief McEvoy at a meeting with the family and their investigator on November 8, 2010.
At oral argument held on March 24, 2011, the court acknowledged respondent’s objection to the additional affidavits and permitted it to submit further, responsive affidavits. Accordingly, respondent submitted affidavits by Chief Tedesco and Officer Mason.* Officer Mason confirms that there was “no official statement” that John’s death was a suicide (Mason affidavit 11 9). Chief Tedesco confirms that “any disclosure of investigation results relative to the death of John Francis Curry would and could prejudice and hamper future investigation and prosecution” (Tedesco affidavit 1i 7) and that, “in a homicide case investigation everyone is a suspect” (id. 1i 8).
As specified above, petitioner has submitted a comprehensive request. Respondent’s apparent position is that if a homicide case is “open,” disclosure of any record related to the investigation of that homicide would “interfere” with their investigation and it was therefore proper to withhold all the requested records pursuant to Public Officers Law § 87 (2) (e) (i). For the following reasons, this court disagrees.
It is well-settled that “blanket exemptions for particular types of documents are inimical to FOIL’S policy of open government” (Gould, 89 NY2d at 275). This standard applies even where, as here, an agency invokes one of the four “law enforcement” exemptions set forth in Public Officers Law § 87 (2) (e) (Brown v Town of Amherst, 195 AD2d 979 [1993]). Here, the Troy Police Department has invoked a “blanket exemption” for all the records in its investigatory file based solely on the fact that John’s homicide is an “open” case. The court acknowledges Deputy Chief McEvoy’s explanation with regard to whether it is appropriate to characterize an open file as “active.” The real question presented, however, is whether each and every record within the “open” John Francis Curry homicide investigation file will interfere with or compromise a “continuing investigative or judicial process” (Matter of Feerick v Safir, 297 AD2d 212, 213 [2002]). For example, a document that relates to “prospective police activity” may be withheld but documents that simply provide the historical context of an investigation should be disclosed (see Council of Regulated Adult Liq. Licensees v City of N.Y. Police Dept., 300 AD2d 17, 18 [2002]).
*180 In support of its position that a blanket exemption is permitted, respondent cites Matter of Lesher v Hynes (80 AD3d 611 [2011], Iv granted 16 NY3d 710 [2011]). In Lesher, petitioners sought “correspondence, memoranda, and other documents exchanged” by and between the District Attorney and federal government agencies regarding the extradition of an individual from Israel (id. at 612). The Court determined that the request was properly denied pursuant to Public Officers Law § 87 (2) (e) (i) and that it was not necessary to “detail the manner in which each document sought would cause such interference” because “the assertion that disclosure would interfere with an ongoing law enforcement investigation was a sufficiently particularized justification for the denial of access to [the] records” (80 AD3d at 613).
Here, although respondent characterizes the case as “open,” there is a dispute with regard to whether there is an “ongoing law enforcement investigation.” Under the circumstances presented in this proceeding, Deputy Chief McEvoy’s statements explaining, in general terms, how an investigation may be compromised fail to provide the necessary “particularized and specific justification” for the determination to withhold all the documents pursuant to Public Officers Law § 87 (2) (e). Where, as here, “the court is unable to determine whether withheld documents fall entirely within the scope of the asserted exemption” an in camera review is necessary (Gould, 89 NY2d at 275). Accordingly, respondent is directed to submit the requested records to the Rensselaer County Supreme Court Clerk within 20 days from the date of service of this decision and order with notice of entry.
Accordingly, it is ordered and adjudged that the petition is granted, in part, to the extent that respondent must provide the requested records to the court for in camera review within 20 days from the date of service of this decision and order, with notice of entry.

 Inexplicably, Deputy Chief McEvoy simply reexecuted the same affidavit he submitted in response to the petition.