Matter of NYP Holdings, Inc. v New York City Police Dept. (2025 NY Slip Op 01009)

Matter of NYP Holdings, Inc. v New York City Police Dept.

2025 NY Slip Op 01009

Decided on February 20, 2025

Court of Appeals

Halligan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 20, 2025

No. 12 

[*1]In the Matter of NYP Holdings, Inc., et al., Respondents,
v
New York City Police Department et al., Respondents, Police Benevolent Association of the City of New York, Inc., Intervenor-Appellant.

Matthew C. Daly, for appellant.
Jeremy A. Chase, for respondents NYP Holdings, Inc. et al.
Reporters Committee for Freedom of the Press et al., The Innocence Project, NAACP Legal Defense and Educational Fund, Inc., amici curiae.

HALLIGAN, J.:

The Freedom of Information Law (Public Officers Law art 6) (FOIL) "imposes a broad duty on government to make its records available to the public" in order "[t]o promote open government and public accountability" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]). "All government records are . . . presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions of Public Officers Law § 87 (2)" (id. at 274-275).
Subdivision 2 of section 87 bars disclosure of "records or portions thereof that . . . are specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]). In 1976, the Legislature enacted former Civil Rights Law § 50-a, which supplied one such exemption:
"All personnel records used to evaluate performance toward continued employment or promotion [of certain law enforcement officers] . . . shall be considered confidential and not subject to inspection or review without the express written consent of [the affected law enforcement officer] except as may be mandated by lawful court order" (former Civil Rights Law § 50-a [1]).
In June 2020, the Legislature concluded that this exemption "undermined" the purpose of FOIL (Senate Introducer's Mem in Support, Bill Jacket, L 2020, ch 96 at 9) and enacted legislation to "immediately" repeal it (L 2020 ch 96, § 5; see id. § 1). The Legislature simultaneously amended FOIL to provide for public access to "law enforcement disciplinary records," which are defined as "any record created in furtherance of a law enforcement disciplinary proceeding" (id. § 2, codified at Public Officers Law § 86 [6]), and added various personal privacy protections for law enforcement officers (see id. § 4, codified at Public Officers Law § 89 [2-b]-[2-c]; see also id. § 3, codified at Public Officers Law § 87 [4-a]-[4-b]).
Following the repeal of section 50-a, NYP Holdings, Inc. and New York Post reporter Craig McCarthy (collectively, the Post) submitted 144 FOIL requests to the New York Police Department (the NYPD) for all disciplinary records in its possession related to specific police officers. The NYPD effectively denied the requests for the records relating to all but one officer, and after exhausting its administrative remedies, the Post commenced this article 78 proceeding to compel disclosure of the requested records. The NYPD moved to dismiss the Post's petition, claiming the requests were so voluminous that compliance with its FOIL obligations would be too burdensome. The Police Benevolent Association of the City of New York, Inc. (the PBA), a union representing members of the NYPD, intervened to assert a separate defense: that records created prior to the repeal of section 50-a were not subject to disclosure under FOIL because the statutory repeal does not apply "retroactively" to records created while the statutory exemption was in effect.
Supreme Court granted the Post's petition. The court denied the NYPD's motion to dismiss because the NYPD did not sufficiently justify its claim that compliance with its FOIL obligations would be too burdensome. It refused to consider the PBA's argument that release of the records would constitute retroactive application of section 50-a and that the Legislature did not intend such retroactivity, holding that an intervening party could not present arguments the NYPD did not assert. Appeals from the NYPD and the PBA followed, but the NYPD eventually withdrew its appeal.
The Appellate Division affirmed. It determined that the PBA's retroactivity argument was properly presented, explaining that "section 50-a, prior to its repeal, created protected rights (for police officers), which should not be deemed automatically waived by the inaction of" the NYPD (220 AD3d 487, 488 [1st Dept 2023] [internal quotation marks, citations, and alteration omitted]). The Court concluded, based on statutory text, purpose, and legislative history, that the repeal of section 50-a "applies retroactively to records created prior to" the repeal's effective date (id. at 489). "[T]he repeal went into effect immediately," the Court noted, "and, by its plain reading and intent, applies to records then existing and not simply to records created at a time subsequent to the enactment of the legislation" (id. [internal quotation marks omitted]). The Court further determined that the repeal was "remedial legislation" and thus "should be given retroactive effect in order to effectuate its beneficial purpose" of increasing public trust in, and accountability of, law enforcement agencies (id. [internal quotation marks omitted]). Finally, the Court explained that adopting the PBA's position "would run counter to the clear legislative purpose of providing public access to records that may contain information about actual or alleged police misconduct" (id.).
We granted the PBA leave to appeal and stayed the First Department's order pending resolution of this appeal. The sole question before us is whether law enforcement disciplinary records created while Civil Rights Law § 50-a was in effect may be disclosed in response to FOIL requests submitted after the statutory exemption was repealed. Since we granted leave in this case, the Second and Fourth Departments, like the First, have concluded that records created prior to the repeal are disclosable, but for a different reason. Both courts determined that requests submitted after the repeal seek a straightforward application of FOIL as it existed at the time of the requests, not a retroactive application of the statutory repeal, and that the Legislature did not otherwise intend to exempt law enforcement disciplinary records from disclosure (see Matter of Newsday, LLC v Nassau County Police Dept., 222 AD3d 85, 92-93 [2d Dept 2023]; Matter of Abbatoy v Baxter, 227 AD3d 1376, 1377 [4th Dept 2024]).
Even assuming, arguendo, that the Post's FOIL requests entail retroactive application of the repeal legislation, the legislation contains the requisite "clear expression of the legislative purpose to justify a retroactive application" (Jacobus v Colgate, 217 NY 235, 240 [1916]). "In determining whether a statute should be given retroactive effect, we have recognized two axioms of statutory interpretation" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]). First, "retroactive operation is not favored by courts and statutes will not be given such construction [*2]unless the language expressly or by necessary implication requires it" (Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d 577, 584 [1998]). Second, "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (Matter of Gleason, 96 NY2d at 122). In addition to these principles of statutory construction, we have identified "[o]ther factors" relevant to "the retroactivity analysis," including "whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the legislative enactment itself reaffirms a legislative judgment about what the law in question should be" (id.).
Applying these rules of interpretation, we conclude that the Legislature intended for the statutory repeal to have retroactive effect. For starters, there is no indication that the repeal was intended to affect the usual manner in which FOIL operates. FOIL requires agencies to "make available for public inspection and copying all records" (Public Officers Law § 87 [2]), and it defines "records" with reference to whether an agency possesses information, but without reference to the date the information was created (id. § 86 [4] [defining "record" as "any information kept" or "held . . . in any physical form whatsoever"]). The amendments impose various redaction requirements and personal privacy protections for law enforcement disciplinary records specifically, yet they do not, for example, single out records created before a certain date for special treatment, or direct that disclosure of any record is tethered to the date it was created. Had the Legislature intended to deviate from FOIL's presumption that information kept or held by an agency is disclosable by exempting records created prior to the repeal, or to mandate that an agency responding to a FOIL request ascertain and apply the law that governed when each responsive record was created, then surely it would have said as much.
The drafting history and purpose of the repeal legislation confirm this understanding. As the Assembly sponsor explained, the legislation was enacted in June 2020 in rapid response to "continuing and widespread demonstrations and demands for reform following the [May 25, 2020] killing of George Floyd" by a Minnesota police officer with an extensive prior disciplinary record (Letter from Assembly Member O'Donnell, Bill Jacket, L 2020, ch 96 at 5). Against this backdrop, the Senate sponsor's memorandum accompanying the bill emphasized its objective: to "help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct" (Senate Introducer's Mem in Support, Bill Jacket, L 2020, ch 96 at 9). The sponsor memorandum further explained that, contrary to FOIL's goals, section 50-a, as "interpreted by" the courts, "prevent[ed] access to both the records of the disciplinary proceedings themselves and the recommendations or outcomes of those proceedings" (id.). That legislative purpose cannot be squared with the PBA's assertion that the Legislature intended to leave all pre-repeal police disciplinary records categorically exempt from FOIL disclosure. These indicia of legislative intent, along with the remedial nature of the repeal legislation, satisfy us that it was intended to have retroactive application.
Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed, with costs.
Order insofar as appealed from affirmed, with costs. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.
Decided February 20, 2025