| |
|---|
| **Tenant Rent Regulation Research Initiative v New York State Div. of Hous. & Community Renewal** |
| 2025 NY Slip Op 33017(U) |
| July 21, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 531578/2024 |
| Judge: Gina Abadi |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 18 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 21st day of July, 2025.

P R E S E N T:

HON. GINA ABADI,
                                    Justice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TENANT RENT REGULATION RESEARCH INITIATIVE
and HALLEY POTTER,

                              Petitioners,                    Index No. 531578/2024

        - against -                                            Motion Seq. 1

NEW YORK STATE DIVISION OF HOUSING AND
COMMUNITY RENEWAL,

                              Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
The following e-filed papers read herein:              NYSCEF Doc Nos.

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____              1-34
Opposing Affidavits (Affirmations)_____             49-56
Reply Affidavits (Affirmations)_____                58-67

Upon the foregoing papers in this Article 78 proceeding, petitioners Tenant Rent

Regulation Research Initiative (T3RI) and Halley Potter (Potter) (collectively, petitioners)

seek a judgment, pursuant to CPLR Article 78 (in motion sequence [mot. seq.] one):  (1)

directing respondent New York State Division of Housing and Community Renewal

(DHCR) to comply with its duty under New York's Freedom of Information Law (FOIL)

to provide petitioners with access to the records petitioners requested in their May 22, 2024

[* 1]

and August 8, 2024 FOIL requests, and (2) awarding petitioners reasonable attorneys' fees and litigation costs, pursuant to Public Officers Law § 89 (4) (NYSCEF Doc No. 2).

## Background

On November 21, 2024, petitioners commenced this Article 78 proceeding by filing a petition alleging that "[t]his proceeding arises out of Respondent's failure to disclose certain information requested by Petitioner[s] relating to cases brought before DHCR's Office of Rent Administration ('ORA')" in violation of FOIL (Petition at ¶ 2). Specifically, on May 22, 2024, T3RI requested two tables from DHCR's computerized recordkeeping system, the Historical Updates and Tracking System database (HUTS), including "anonymized information detailing the cases ORA has processed, their types, processing dates and outcomes, and major events" (NYSCEF Doc No. 34 at 5). Regarding DHCR's denial of T3RI's first Foil request, the petition alleges that:

> "[o]n June 27, 2024, DHCR's Records Access Officer ('RAO') denied the request in full, on the purported grounds, as relevant here, that 'significant portions of the data relate to registration information, which is exempt from disclosure under [FOIL] based on Rent Stabilization Law § 26-517(b). The RAO further purported to determine that 'ORA does not possess an existing report that includes the database tables you cited. The Public Officers Law does not require us to compile this information or create a new report to respond to a FOIL request'" (petition at ¶ 10).

On July 23, 2024, T3RI submitted an administrative appeal to DHCR challenging the denial of its FOIL request (*id.* at ¶ 11). On August 8, 2024, the DHCR denied T3RI's

2

[* 2]

appeal on the grounds that Tenant Protection Regulations[1] render registration information exempt under FOIL (*id.* at ¶ 13). The DHCR also relied on § 8586.6 of the Emergency Housing Rent Control Act, which "commanded that the agency 'not publish or disclose any information obtained under this act that the commission deems confidential or with reference to which a request for confidential treatment is made by the person furnishing such information'" (*id.*). DHCR also asserted that ORA would have to create a report containing the data requested by T3RI because it does not have such a report, and FOIL does not require an entity to prepare or compile a new report in response to a FOIL request.

On August 8, 2024, T3RI submitted a second FOIL request "narrowing its request to only a small subset of the information in the data tables it had initially requested" "to avoid any information DHCR had found to be exempt in its denial of the first request . . ." (*id.* at ¶12). The second FOIL request also did not seek registration information and only requested records concerning rent stabilized housing accommodations (*id.*). The second FOIL request sought "fields containing basic anonymized metadata about the cases: their docket numbers, the housing accommodations to which they applied, their outcomes, and DHCR's log of major events in their processing" (NYSCEF Doc No. 34 at 7).

On September 10, 2024, DHCR denied T3RI's second FOIL request on the ground that the request was 'duplicative' of T3RI's first FOIL request (petition at ¶ 14). On September 13, 2024, T3RI appealed from the DHCR's denial of its second FOIL request (*id.* at ¶ 15). On October 7, 2024, DHCR denied T3RI's second administrative appeal on

---

[1] DHCR referenced § 2528.5 of the Rent Stabilization Code and § 2509.4 of the Tenant Protection Regulations, both of which govern rent stabilized apartments (NYSCEF Doc No. 7 at 1).

3

[* 3]

the same grounds as DHCR's denial of the first appeal and because the second FOIL request was "duplicative" of the first FOIL request (*id.* at ¶ 16). To date, DHCR has not released any documents in response to T3RI's two FOIL requests (*id.* at ¶ 17).

The petition alleges that "DHCR has wrongly withheld documents under claimed statutory exemptions that do not properly apply or has purported to withhold documents for reasons that are not statutory exemptions" and "failed to provide a specific and particularized justification for withholding each document or portion thereof that it is refusing to disclose" (*id.* at ¶¶ 19 and 25). The petition also alleges that DHCR "has refused to perform a duty enjoined upon it by FOIL, erred as a matter of law, and otherwise acted arbitrarily and capriciously" and "[its] failure has caused, and continues to cause, immediate and irreparable harm to the rights guaranteed to T3RI and to the public at large under FOIL" (*id.* at ¶¶ 26-27).

Petitioner submits a memorandum of law explaining that T3RI requested data reflecting how ORA processes tenant complaints so it can "update a 2013 audit by the New York State Comptroller identifying serious flaws and multi-year delays that can deter tenants from even attempting to assert their rights" (NYSCEF Doc No. 34 at 1). Petitioners assert that "[i]n violation of FOIL, DHCR refused to disclose data that would show how the backlog and wait times have changed over time, and whether case processing times differ by geography, or in buildings where the agency has already found rent manipulation" (*id.*). Petitioners assert that "[d]isclosure of the information at issue is necessary for New

4

[* 4]

Yorkers to evaluate whether DHCR is properly fulfilling its mandate to enforce the rent regulation laws ensuring access to stable, affordable housing" (*id.* at 2).

Regarding DHCR's assertion that FOIL does not require it to extract information from its database to create a report, petitioners contend that "this argument was squarely rejected by both the Court of Appeals and by the state legislature in the 2008 FOIL Amendments, which established that database files, like any other agency record, must be produced even if extracting the data requires 'programming,' and that such programming isn't considered creating a 'new record'" (*id.* at 1). Petitioner's note that DHCR does not assert that its staff cannot extract the requested data from the HUTS database with "reasonable effort" and that "DHCR has already disclosed that its database administrators created a program to do exactly this type of extraction[,]" and thus, it would take minimal effort to produce the requested data (*id.* at 10).

Petitioners assert that DHCR improperly invoked § 8586.8 of the Emergency Housing Rent Control Law (ERL), a statute covering rent-controlled apartments outside of New York City, which authorizes DHCR to withhold information it deems "confidential" (*id.* at 2 and 11-12). However, petitioners argue that the data sought is not confidential, since DHCR regularly publishes such information on its website, and the second FOIL request only sought information relating to rent stabilized apartments, which the statute does not cover (*id.*). Petitioners contend that "[e]ven if the small portion of requested data covered by the ERL could be withheld as 'deemed confidential' . . . withholding *all* case processing data still could not be justified" (*id.* at 12-13). Petitioners assert that "Section 8

5

(5) of the ERL establish[es] that basic information about case processing is not 'deem[ed] confidential'" and that "the agency's failure to explain what, if any, of the database entries it actually 'deems' confidential falls short of its FOIL burden . . ." (*id.* at 13 and 14).

Petitioners argue that DHCR relied on its own regulations purporting to exempt "registration information" for rent stabilized apartments from FOIL, despite the fact that "agency regulations cannot supersede the FOIL statute . . ." and the case processing information T3RI seeks has nothing to do with landlords' apartment registrations (*id.* at 2). Petitioners note that in T3RI's second FOIL request "T3RI provided a detailed data diagram of the files it requested, from DHCR's own procurement documents,[2] and explained how those diagrams demonstrated that all of the requested information is agency-generated metadata concerning case processing – not information submitted by landlords as part of their registrations" (*id.* at 16-17). Petitioners note that if the legislature intended to exempt DHCR's case processing data from FOIL it could have done so (*id.* at 19).

Petitioners note that DHCR denied T3RI's second FOIL request as "duplicative" although T3RI narrowed down the data sought in its second FOIL request and "there is no FOIL exemption for 'duplicative' requests . . ." (*id.* at 2). Petitioners argue that "DHCR's refusal to disclose any of the case processing information cannot be squared with the limited scope of the purported exemptions it has invoked" because "[i]t is the agency's obligation to withhold only those portions of a record that fall squarely within an

---

[2] Petitioners assert that "RSC Part 2527 governing DHCR proceedings has its own mechanism for collecting information about apartments for case processing . . ." including DHCR forms submitted by tenants complaining of overcharges or decreased services, which contain the data that T3RI seeks by its FOIL requests (*id.* at 18).

6

[* 6]

exemption, and it must produce all other reasonably segregable portions" (*id.* at 8 and 12-13).

Petitioners submit an affirmation from Alan Brooks (Brooks), an expert in the field of information technology (IT) specializing in Model 204 databases, such as HUTS (NYSCEF Doc No. 23). Brooks concludes that "[t]he design of the [HUTS] database shows that information for case processing and registration is generally segregated and stored separately" (NYSCEF Doc No. 23 at ¶ 20). Brooks explains that "[t]he two data files requested by T3RI . . . are both concerned exclusively with processing cases before the agency, and contain little if any information overlapping with the tables containing 'registration information'" (*id.* at ¶¶ 23-26). Brooks affirmed that "[a]fter review of DHCR's public files . . . I can reasonably conclude that the extraction of the files would not require a new 'report,' and that the extraction could be performed with reasonable effort" since DHCR confirmed that "the M204 code necessary to extract files from HUTS into data-delimited files, as T3RI has requested, has already been written" (*id.* at ¶¶ 30-33). Brooks noted that "[e]ven if [DHCR] staff were required to start from scratch, and program a new solution for querying the database to extract the files T3RI requested, that task would be simple and routine for an experienced M204 administrator" and DHCR has engaged in "precisely this type of operation for responding to previous FOIL requests" (*id.* at ¶ 34).

***DHCR's Answer***

7

On May 14, 2025, DHCR answered the petition, denied the material allegations therein and asserted various objections in law, including that "[t]he information sought by petitioners is, in whole or in part, exempted from disclosure under FOIL . . ." pursuant to POL §§ 89 (3) and 87 (2) and the New York State Rent Stabilization Law § 26-517 (NYSCEF Doc No. 49 at ¶¶ 33-35). Notably, counsel for DHCR affirms that the New York State Office of Information and Technology (ITS) "advised DHCR that while it could provide general guidance, [it] is no longer extracting data or running reports from the HUTS Data Warehouse on behalf of ORA or in response to FOIL requests made to DHCR" (NYSCEF Doc No. 53 at ¶ 55).

DHCR also submits an affirmation from Simon McDonnell (McDonnell), the Chief Research Officer for New York State Homes and Community Renewal's (HCR) Office of Research and Strategic Analysis (ORSA), which "core functions include data and methodology management, reporting [and] program and policy analysis . . ." and the "primary user and coordinator" of ITS's "Data Warehouse" (NYSCEF Doc No. 52 at ¶¶ 3-4). McDonnell affirms that "ORSA is not able to create, edit, or manage data in the Data Warehouse . . ." and "ORSA is best suited within HCR to use and generate reports based on data cached in the Data Warehouse" (*id.* at ¶¶ 4-5).

McDonnell also affirms that "HUTS is a legacy database system implemented in the early 1980's that ORSA does not have direct access to" and that "[g]iven the age of the HUTS system and how it operates, it would be more practical to use the Data Warehouse to attempt to access the information sought in the FOIL Requests rather than HUTS" (*id.*

8

[* 8]

at ¶¶ 7 and 12). McDonnell also asserts that production of the particular data fields requested in T3RI's FOIL requests "may lead to the inadvertent disclosure or discoverability of a tenant's name and address" (*id.* at ¶ 4). McDonnell seemingly argues that a response to T3RI's narrower FOIL request would also be burdensome:

> "[g]enerating a report based on even the narrower of the two FOIL Requests would result in a case file that includes approximately 768,000 records. Each case file has an event file that details all events of case progression. The event file would include well over an additional 10 million records. While the case file data can be produced in a machine-readable format, the size of the event file data would be too large to use in a program like Microsoft Excel which has a limit of around 1 million rows" (*id.* at ¶ 17).

Finally, DHCR submits an affirmation from Bruce Falbo (Falbo), the Bureau Chief of the Rent Information Bureau of ORA, who supervises the unit at ORA responsible for responding to FOIL requests (NYSCEF Doc No. 50 at ¶ 6). Falbo affirms that ORA is the custodian of records for apartments subject to rent control and rent stabilization, including "copies of orders, case files, rent control records and rent stabilized rent registration filings" which "information is not generally accessible to the public" (*id.* at ¶¶ 13-14). Falbo affirms that much of this information is stored in HUTS, "a mainframe legacy system that contains extensive quantities of information but has limited functionality, due to its outdated technology" (*id.* at ¶ 15). Falbo describes ORA's FOIL response process, including that "ORA FOIL staff have the dual and simultaneous responsibility to provide open access to agency records and protect certain agency records from disclosure" (*id.* at ¶ 28).

***Petitioners' Reply***

9

[* 9]

Petitioners, in reply, submit an affirmation from Potter, the President of T3RI, an "unincorporated association dedicated to pursuing data projects that support tenant rights in rent-regulated housing" (NYSCEF Doc No. 58 at ¶ 1). Potter explains that "T3RI was prompted to undertake a review of DHCR's case processing after multiple reports [from the Office of the State Comptroller] emphasized the pervasive and lengthy case processing delays tenants experience when attempting to address their housing issues through DHCR" (*id.* at ¶ 2). Potter asserts that one of the issues that contributes to lengthy processing times is the "antiquated" HUTS database currently used by DHCR (*id.* at ¶ 3).

Potter explains that T3RI seeks "an anonymized index of cases processed and the timeline of events involved in their processing" and that "T3RI deliberately avoided, and did not request, any personally identifiable information, contact information, or any information other than the data about the cases themselves . . ." (*id.* at ¶¶ 4-5). When T3RI's first FOIL request was denied because it purportedly sought "registration" information, T3RI "submitted a significantly narrowed second request seeking only a limited subset of fields, specifically designed to address the agency's objections . . ." (*id.* at ¶¶ 7-8). Potter asserts that T3RI's second, narrower FOIL request was denied as duplicative (*id.* at ¶ 8).

Potter explains that "DHCR did not contact us to discuss any information or data held by the agency that could be relevant to our requests (other than its blanket denials) until early 2025[,]" during the pendency of this proceeding, when DHCR "revealed that HUTS has the capability of generating 'Case Aging Reports' containing summary statistics about how long the agency takes, on average, to process each case type" (*id.* at ¶ 9). Potter

10

[* 10]

notes that DHCR shared a report generated in November 2024 with data from 2004, yet "indicated that it would only share reports with data to the present day if T3RI agreed to give up on case-level data" (*id.* at ¶ 10). Potter asserts that "T3RI requires granular, case-level data – not summary reports – to conduct meaningful research on DHCR's case processing performance" (*id.* at ¶ 16).

Potter explains why each of the data fields requested by T3RI's second FOIL requests is essential, including: (1) the "Docket No" and original entry date, which "enable tracking individual cases from filing through resolution, allowing calculation of processing times for each case, and steps within cases, rather than relying on averages that may obscure systematic delays"; (2) the "Case Type" which "allows analysis of delays for specific types of complaints"; (3) "Bldg ID" "can allow researchers to evaluate whether DHCR's processing times are impacted when there are multiple similar requests in a particular building"; (4) "Case Status" and "Status" date "allow tracking of case progression through DHCR's internal processes, enabling analysis of where bottlenecks occur"; and (5) "Event Type" and "Event" date "provide detailed case processing timelines that would allow T3RI to identify periods of inactivity in case processing . . ." (*id.* at ¶ 22).

Potter affirms that "other housing agencies [such as New York City's Department of Housing Preservation and Development and Department of Buildings] routinely make complaint databases available to the public, demonstrating both the feasibility and appropriateness of releasing such information" (*id.* at ¶¶ 23-24). Potter asserts that "[t]hese databases provide the type of complaint-by-address information that DHCR claims would

11

be inappropriate to release, yet they are widely used by researchers, advocates, and the general public without the privacy concerns DHCR suggests" since the complainants' contact information (name, email and phone) was redacted (*id.* at ¶ 24). Potter also notes that government agencies typically release large datasets involving millions of entries, and thus, "the volume of data T3RI seeks (768,000 cases and 10 million events) is well within the range of what government agencies routinely provide to the public" (*id.* at ¶ 26).

Potter notes that "DHCR, despite its protests, routinely releases precisely the type of data it claims is protected here" when it publishes Petition for Administrative Review (PAR) decisions through the ORA Transparency Initiative (*id.* at ¶ 27). Notably, while DHCR objects to the release of Building IDs in response to T3RI's FOIL requests because they could be used to identify street addresses, the DHCR's PAR decisions include the street addresses and merely exclude the tenant names and apartment numbers (*id.* at ¶ 28).

### Discussion

The purpose of FOIL is "[t]o promote open government and public accountability" (*Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 274 [1996]). In furtherance of the legislature's policy of disclosure, "FOIL provides the public with broad 'access to the records of government' [and a]n agency must 'make available for public inspection and copying all records' unless it can claim a specific exemption . . ." (*Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462 [2007], quoting Public Officers Law §§ 84, 87 [2]; 89 [3]). These "exemptions are to be narrowly interpreted so that the public is granted maximum access to the records of government" (*id*. at 462).

12

"The standard of review in a CPLR article 78 proceeding challenging an agency's denial of a FOIL request is much more stringent than the lenient standard generally applicable to CPLR article 78 review of agency actions" (*Matter of Luongo v Records Access Officer*, 161 AD3d 1079, 1080 [2d Dept 2018]; *see Matter of Gruber v Suffolk County Bd. of Elections*, 218 AD3d 682, 684 [2d Dept 2023], *lv denied* 41 NY3d 902 [2024]). In such a proceeding, "the court is to presume all records are open" (*Matter of Berger v New York City Dept. of Health & Mental Hygiene*, 137 AD3d 904, 906 [2d Dept 2016], *lv denied* 27 NY3d 910; *see Matter of Gould*, 89 NY2d at 274-275) and "an agency claiming an exemption from disclosure has the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access" (*Matter of Luongo*, 161 AD3d at 1080 [internal quotation marks omitted]; *see Matter of Gould*, 89 NY2d at 275; *Matter of Gruber*, 218 AD3d at 684). "Conclusory assertions that certain records fall within a statutory exemption are not sufficient; evidentiary support is needed" (*Matter of Berger*, 137 AD3d at 906 [internal quotation marks omitted]).

Essentially, this Article 78 proceeding seeks to compel production from DHCR of limited data maintained in DHCR's database, HUTS, regarding ORA's processing of tenants' complaints and *does not seek* any confidential data from DHCR's files regarding landlord registration. Thus, DHCR's objection to T3RI's two FOIL requests on the ground that they seek the production of confidential registration information is rejected since registration information is not even sought.

13

[* 13]

The DHCR's objection to T3RI's FOIL requests on the ground that they improperly require DHCR to create reports that do not exist is similarly unavailing because POL § 89 (3) (a), part of the FOIL Amendments of 2008, clarified that "[w]hen an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so" (L 2008, ch 223, § 8; Pub. Off. L. § 89 [3]). The 2008 FOIL Amendments further provide that "[a]ny programming necessary to retrieve a record maintained in a computer storage system and to transfer that record to the medium requested by a person . . . shall not be deemed to be the preparation or creation of a new record" (*id.; see also Weslowski v Vanderhoef*, 98 AD3d 1123, 1127-1228 [2d Dept 2012] [holding that the 2008 FOIL amendments "expanded the duties of agencies in disclosing records maintained on computer systems . . ."]).

Finally, petitioners have demonstrated, and DHCR does not deny, that the extraction of the requested information from DHCR's HUTS computer database could be done with reasonable effort based on expert testimony from Brooks, petitioners' IT expert. According to Brooks uncontested expert testimony, DHCR has confirmed that the M204 code necessary to extract files from HUTS has already been written and DHCR has engaged in this same operation for responding to previous FOIL requests.

Under these circumstances, where the requested information is agency-generated metadata concerning DHCR's case processing, which is readily and reasonably accessible on DHCR's HUTS computer system, this court has determined that production of the requested data is subject to production under FOIL. DHCR has failed to satisfy its burden

14

[* 14]

of demonstrating that the requested data falls within a specific FOIL exemption. Accordingly, it is hereby

**ORDERED** that petitioners' petition (mot. seq. one) is granted and the DHCR is directed to comply with its duty under FOIL to provide petitioners with access to the case processing data T3RI requested in its May 22, 2024 and August 8, 2024 Foil requests; the petition is otherwise denied.

This constitutes the decision, order and judgment of the court.

E N T E R,

_____

Hon. Gina Abadi
J.S.C.

15

[* 15]