Matter of Munson v New York State Div. of Criminal Justice Servs.

2026 NY Slip Op 02017

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Emilie Munson et al., Respondents,

v

New York State Division of Criminal Justice Services, Appellant.

Decided and Entered:April 2, 2026

CV-24-2109

Calendar Date: November 19, 2025

Before: Garry, P.J., Aarons, Pritzker, Powers And Corcoran, JJ.

Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for appellant.

The Hearst Corporation, New York City (Nina N. Shah of counsel), for respondents.

[*1]

Corcoran, J.

Appeal from a judgment of the Supreme Court (Meagan Galligan, J.), entered November 4, 2024 in Albany County, which partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondent denying petitioners' Freedom of Information Law request.

Respondent maintains a central registry of all police officers and peace officers certified to serve in the state pursuant to Executive Law § 845. For each officer, the registry contains "his or her name, date of birth, social security number, rank or title, employer, and date of successful completion of training" (Executive Law § 845 [1]). Local and state agencies must provide this information to respondent annually and whenever new officers are appointed (see Executive Law § 845 [2] [a]). In August 2022, petitioner Emilie Munson, an Albany Times Union reporter, submitted a request pursuant to the Freedom of Information Law (see Public Officers Lawart6 [hereinafter FOIL]) seeking records for all certified and decertified officers, together with officers' names, city and/or zip code of residence, current and previous employers with current and/or last ranks and positions for each, training history and other information.

Respondent effectively granted Munson's request for information related to decertified officers by referring her to its website, where it publishes the statewide list of decertified officers, i.e., those deemed ineligible for continued police employment. However, respondent asserted that the list of all certified officers was exempt from disclosure pursuant to Public Officers Law § 87 (2) (f) because releasing it "could endanger the life or safety of any person." In denying petitioners' administrative appeal, respondent explained that the registry necessarily includes officers serving in undercover capacities, and that respondent lacks the ability to identify or segregate those officers from the registry.

Petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action challenging respondent's denial of the registry of certified officers. Supreme Court partially granted the petition and directed disclosure of the requested records, subject to redaction of the officers' city or zip code of residence and other identifying information. Respondent appealed, and this Court modified the judgment and remitted the matter to Supreme Court to permit further submissions and in camera review "for determination as to whether further redaction of all identifying information is necessary" (228 AD3d 1119, 1122 [3d Dept 2024]). Upon remittal, Supreme Court adhered to its prior determination granting the petition after finding that respondent did not show a possibility of endangerment to officers listed on the registry. The court directed respondent to disclose the entire registry after redacting information related to undercover training, together with the city or zip code [*2]of residence. Respondent again appeals, and we reverse.

"FOIL imposes a broad duty of disclosure on government agencies and all agency records are presumptively available for public inspection and copying unless one of the statutory exemptions applies, in which case the agency may withhold or redact the requested records" (Matter of Whitfield v FOIL Appeals Officer, Dept. of Corr. & Community Supervision, 221 AD3d 1341, 1343 [3d Dept 2023] [internal quotation marks and citations omitted]). "Public Officers Law § 87 (2) (f) exempts from disclosure materials that, if disclosed, could endanger the life or safety of any person, and respondent, the agency in question, need only demonstrate a possibility of endangerment in order to invoke this exemption" (Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision, 209 AD3d 1208, 1211-1212 [3d Dept 2022] [internal quotation marks and citations omitted], affd 42 NY3d 936 [2024]). Although "[e]xemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]), they "must be given their natural and obvious meaning where such interpretation is consistent with the legislative intent and with the general purpose and manifest policy underlying FOIL" (Matter of Hutchinson v Annucci, 189 AD3d 1850, 1853 [3d Dept 2020] [internal quotation marks and citation omitted]).

"[W]ithholding or denying a request is proper 'where the requested records, when combined with other readily available information, could identify or lead to the identification of information protected under a FOIL exemption' " (Spence v New York State Dept. of Civ. Serv., 223 AD3d 1019, 1020 [3d Dept 2024], quoting Matter of Suhr v New York State Dept. of Civ. Serv., 193 AD3d 129, 136 [3d Dept 2021], lv denied 37 NY3d 907 [2021]). The exemption allows an agency to withhold information that would identify undercover officers (see Matter of Grajales v Lungen,15 AD3d 789, 790 [3d Dept 2005], lv denied 5 NY3d 704 [2005]). Moreover, a law enforcement agency may properly invoke the "life or safety" exemption under Public Officers Law § 87 (2) (f) to withhold information which could be used in combination with other readily available information to estimate the number of undercover officers in a department or the relative staffing levels of police departments or precincts (see Matter of Digital Forensics Unit v Records Access Officer, 214 AD3d 532, 533-534 [1st Dept 2023]; Matter of Empire Ctr. for Pub. Policy v New York City Off. of Payroll Admin.,2019 NY Slip Op 30643[U], *5 [Sup Ct, NY County 2019], mod 187 AD3d 435, 435-436 [1st Dept 2020], lv denied 36 NY3d 906 [2021]; see also Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police, 218 AD2d 494, 499 [3d Dept [*3]1996]). As explained below, the state registry could be compared to a local law enforcement agency's public payroll database to discern the names and total number of officers working in an undercover or sensitive role because respondent and some police agencies use different procedures to shield this information. Thus, Supreme Court erred in directing respondent to disclose the registry with certain fields redacted because redaction will not adequately minimize the risks of disclosure.

Although respondent may adopt regulations to ensure the integrity of the registry as a public record (see Executive Law § 845; 9 NYCRR part 6056; 6056.3 [a]), the regulations do not address how to handle FOIL requests that implicate sensitive information like undercover assignments or training. As explained by the affidavit of the agency's representative, each law enforcement agency is required to submit to the state registry certain prescribed information for each certified officer it employs, including officers working undercover or in sensitive capacities, though the officer's undercover status is not revealed in this submission. Respondent therefore cannot discern from the registry if a particular officer works undercover. When respondent receives a FOIL request for an officer's registry information, it communicates with the officer's employer to identify any justification for redacting or withholding information, including that the officer works undercover or in a sensitive position. Respondent then discloses the officer's registry profile after redacting statutorily protected information, such as social security numbers and birthdates, as illustrated by the exemplar registry profile annexed to the petition by Munson. This practice is unaffected by this appeal, such that the public and police agencies may verify whether a particular officer maintains current, proper certification by requesting registry information for a particular officer or by reviewing respondent's list of decertified officers.

The in camera submissions reveal that, unlike the state registry, at least one police agency omits from its own public payroll database certain information about certified officers working undercover or in sensitive assignments to protect their safety and preserve confidentiality; again, the police agency submits information about those same officers to the state registry. This distinction in how respondent and a local law enforcement agency account for undercover officers would be evident to one who compares the department's public payroll database to the list attributed by the state registry to that agency. Simply put, comparing the state registry to a local department's publicly disclosed payroll database could reveal names of undercover officers that appear on the state registry but not on their employer's redacted payroll database. Thus, respondent demonstrated that disclosure of the registry could endanger police officers who could be presumptively revealed by [*4]name as working undercover, thereby satisfying its burden to trigger the exemption under Public Officers Law § 87 (2) (f).

We next consider the distinct risk to public safety implicated by potential disclosure of the registry with redaction of social security numbers, zip codes, city/town, and undercover training as ordered by Supreme Court.FN1 Disclosure of the current employer of all certified officers, even with other fields redacted, could still reveal the number of undercover officers in a particular department, thereby creating a possibility of endangerment justifying denial of the public information request (see Matter of Digital Forensics Unit v Records Access Officer, 214 AD3d at 533-534; Matter of Empire Ctr. for Pub. Policy v New York City Off. of Payroll Admin., 187 AD3d 435, 435-436 [1st Dept 2020], lv denied 36 NY3d 906 [2021]). Such information could be used in conjunction with future requests for equivalent information to estimate increases or decreases in the number of undercover officers, thereby undermining their deterrent effect or hampering law enforcement operations (see Matter of Empire Ctr. for Pub. Policy v New York City Off. of Payroll Admin., 187 AD3d at 435-436).

Respondent has demonstrated that these risks are not merely theoretical. For example, the record-keeping and disclosure practices of the New York Police Department (hereinafter NYPD), and the roadmap to deduce the number of officers assigned to undercover operations, were discussed at oral argument and are detailed in Matter of Empire Center,a case cited by both parties here (see Matter of Empire Ctr. for Pub. Policy v New York City Off. of Payroll Admin.,187 AD3d at 435-436). In that case, the petitioner strategically sought the total amount spent annually by the NYPD on undercover officers by requesting salary information that was not included in the department's searchable public payroll database. The respondent payroll agency submitted an affidavit from a knowledgeable police department official describing generally how and where undercover officers are deployed and how and when they appear in department databases (see id.). The Appellate Division, First Department held that the public safety exemption was triggered by the official's description of how anonymous, aggregate salary data could be compared to the public payroll database to deduce increases or decreases in undercover policing, thus creating a possibility of endangerment to public safety (see id.). Here, comparing a department's public payroll database to the state registry, even with all names redacted, would permit an even more direct calculation of changes in undercover staffing than the one found sufficient to trigger the public safety exemption in Matter of Empire Center.

To the extent petitioners may argue that respondent did not directly articulate this basis for withholding the state registry during administrative review, this Court may still address and rely upon it because "the confidentiality [*5]rights of third parties not before the court are implicated by the disclosure determination" (Matter of Hutchinson v Annucci, 189 AD3d at 1855 [internal quotation marks and citation omitted]; accord Matter of Whitfield v FOIL Appeals Officer, Dept. of Corr. & Community Supervision, 221 AD3d at 1344). Regardless, on remittal to consider supplemental materials in camera, some law enforcement agencies addressed disclosure of aggregate information, buttressing the concern described above.

As respondent met its burden of proving that disclosure of the state registry could create a possibility of endangerment under Public Officers Law § 87 (2) (f), Supreme Court erred in granting the petition and ordering disclosure with redactions. Consistent with that finding, there is no basis for awarding counsel fees and costs to petitioners, since they have not "substantially prevailed" (Public Officers Law § 89 [4] [c]; see Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision,209 AD3d at 1214; Matter of Empire Ctr. for Pub. Policy v New York City Off. of Payroll Admin., 187 AD3d at 436).

Garry, P.J., and Pritzker, J., concur.

Powers, J. (dissenting).

This Court set forth in no uncertain terms that remittal was not meant to provide respondent "another full bite of the apple" but was intended to afford it the opportunity to demonstrate, out of the public eye, "how the information might be utilized to endanger active undercover officers" and "whether further redaction of all identifying information [was] necessary" (228 AD3d 1119, 1121-1122 [3d Dept 2024]). As this Court should be constrained to consider only the submissions provided in camera upon remittal, which failed to establish how the information may be utilized to endanger undercover officers, we must dissent because denial of disclosure is not supported.

"In a CPLR article 78 proceeding to compel production of records pursuant to FOIL, the government has the burden of establishing the applicability of its asserted exemption" and "[w]e must narrowly construe such FOIL exemptions to ensure maximum public access to government records" (Matter of Russell v Town of Mt. Pleasant, N.Y., ___ NY3d ___, ___, 2026 NY Slip Op 00966, *3 [2026]). "Public Officers Law § 87 (2) (f) exempts from disclosure materials that, if disclosed, could endanger the life or safety of any person, and respondent, the agency in question, need only demonstrate a possibility of endangerment in order to invoke this exemption" (Matter of Munson v New York State Div. of Criminal Justice Servs., 228 AD3d 1119, 1121 [3d Dept 2024] [internal quotation marks and citations omitted]). "A denial of access shall not be based solely on the category or type of such record and shall be valid only when there is a particularized and specific justification for such denial" (Public Officers Law § 87 [2]). As such, conclusory or speculative assertions without factual support are "insufficient to meet [an [*6]agency's] burden of demonstrating that [an] exemption applie[s]" (Matter of Wagner v New York City Dept. of Health & Mental Hygiene, 246 AD3d 751, ___, 2026 NY Slip Op 00517, *2 [2d Dept 2026] [internal quotation marks and citation omitted]; see Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision, 211 AD3d 1382, 1384 [3d Dept 2022]; Matter of Vertucci v New York State Dept. of Transp., 195 AD3d 1209, 1211 [3d Dept 2021], lv denied 37 NY3d 917 [2022]).

To, among other things, "ensure that persons whose names are contained [there]in . . . are lawfully appointed" (9 NYCRR 6056.1 [c]), respondent is required to "collect information to maintain, on a current basis, a registry of all police officers and peace officers in the state. Such registry shall contain, with respect to each officer, his or her name, date of birth, social security number, rank or title, employer, and date of successful completion of training required by [CPL 2.30] and [General Municipal Law § 209-q]" (Executive Law § 845 [1]). At no point during this proceeding has respondent provided even a fully redacted version of the registry it maintains. For that reason, we cannot be certain what data points are contained on the registry, and, therefore, we are guided only by these statutory requirements.FN2

Although an in-depth review of the procedural history of this matter is not necessary, it is relevant that Supreme Court initially granted petitioners' request for disclosure finding that respondent did not make a particularized and specific showing that release of the information sought could identify those who currently serve or have served in an undercover capacity. Supreme Court did find, however, that redaction of the city or zip code of residences was supported.FN3 Respondent appealed to this Court and, in the context of that appeal, we found that "respondent's conclusory and speculative affidavit, averring as it does that the safety exemption justifies denial of access to the requested records, [was] insufficient to deny access to the records sought" (228 AD3d at 1121). Therefore, considering what we perceived to be respondent's "reasonable hesitation to articulate in open court how the information might be utilized to endanger active undercover officers," we remitted the matter to allow the parties to provide in camera submissions and for Supreme Court to determine "whether further redaction of all identifying information [was] necessary" (id. at 1121, 1122). Upon its consideration of these submissions, Supreme Court again found that respondent did not sufficiently establish how disclosure of the registry could potentially identify officers who currently serve or have served in an undercover capacity, provided that relevant training as to undercover work was redacted. Therefore, Supreme Court again granted disclosure of the registry with this limited carveout for the redaction of relevant training. Therefore, up until this point, the only [*7]information to be redacted was the certified officer's zip code or city of residence and any training relevant to undercover work.

Without providing a high level of detail as to the submissions provided in camera, an affidavit was supplied by an employee of respondent familiar with the registry. Therein it was affirmed that respondent does not have the ability to identify officers listed on the registry who currently serve in an undercover or sensitive capacity, or may do so in the future, and that it does not receive this information from law enforcement agencies. This affiant asserted broadly that identification of undercover officers may endanger their safety and that of their families and then detailed the attachments provided in support of the affidavit. These attachments describe how any — not just those who may serve in an undercover capacity — officer's name and place of employment may be utilized to discover personal information by harnessing the Internet and, along the same lines, that the Internet can be utilized to find photographs of that individual and those close to them. It was then set forth that, because those recruited to serve in undercover capacities are often experienced officers, it is likely that their name and/or image appears online in connection with their role in law enforcement. The attachments assert that if identities are known, officers may face threats, intimidation and potential harm, again a claim not limited to those who serve in an undercover capacity. Based upon these attachments, the affidavit ultimately opined that release of the registry and training history could endanger undercover officers, as it provides information to those who may seek to uncover the identities of these officers. Therefore, according to respondent, petitioners' request should be denied in its entirety.

The assertions contained in this affidavit mirror, albeit in slightly more detail, those made to Supreme Court in the first instance and the risks described therein are undoubtably true for all officers, not just those who serve in an undercover capacity. Nevertheless, these submissions failed to demonstrate what respondent was required to establish upon remittal: how one may utilize the registry to narrow down who on that list serves in an undercover capacity. Instead, the submissions contain only generalized assertions that when an officer's name is known, the Internet may be utilized to discover personal information and, because of the role undercover officers play, the safety risk is greater to these officers. To the extent the majority asserts that the submissions set forth that at least one agency does not disclose payroll information related to undercover officers, this is not borne directly by the record. Instead, the in camera submissions set forth that certain internal databases do not reflect these officers' information. Moreover, it is not clear how a law enforcement agency's decision to publicize itself and the accomplishments [*8]of its officers should be used as a basis to deny access to information which would otherwise be public. Accordingly, these assertions remain speculative and conclusory and, therefore, inadequate to deny access to the requested records (see Matter of Munson v New York State Div. of Criminal Justice Servs., 228 AD3d at 1121; cf. Matter of Mack v Howard, 91 AD3d 1315, 1316 [4th Dept 2012]; Matter of Carnevale v City of Albany, 68 AD3d 1290, 1292 [3d Dept 2009]; see generally Matter of Standardbred Owners Assn., Inc. v New York State Gaming Commission, 237 AD3d 1354, 1356-1357 [3d Dept 2025]).

Based upon the foregoing, we would order disclosure of responsive records with the redaction of social security numbers and any training history related to undercover work. The majority claims that redaction of such training history would highlight the fact that the officer in question may serve in an undercover capacity. Such assertion is based upon the unsupported assumption that respondent has no way to redact documents without making it evident that information has been subject to redaction. This argument is not only speculative but also has not been advanced by respondent during this proceeding or — even more to the point, considering these redactions were ordered by Supreme Court — in its brief on appeal (see generally Matter of Reclaim the Records v New York State Dept. of Health, ___ NY3d ___, 2025 NY Slip Op 03102, *7 [2025]).FN4

In addition to the foregoing, we also find the majority's invocation of the public safety exemption to be improper as this was never raised by respondent as grounds for denial of petitioner's FOIL request. "Judicial review of an administrative determination is limited to the grounds invoked by the agency and the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis" (Matter of Reclaim the Records v New York State Dept. of Health, ___ NY3d at ___, 2025 NY Slip Op 03102, *5 [internal quotation marks, brackets and citations omitted; emphasis added]). While "this principle of administrative law d[oes] not preclude Supreme Court from addressing the applicability of [a]newly raised exemption," that court — and this Court as well — may not replace the grounds raised by respondent with another that has not been (Matter of Rose v Albany County Dist. Attorney's Off., 111 AD3d 1123, 1125 [3d Dept 2013] [emphasis added]). The cases relied upon by the majority to conclude otherwise are readily distinguishable as the exemption under review was raised at some juncture (see Matter of Whitfield v FOIL Appeals Officer, Dept. of Corr. & Community Supervision, 221 AD3d 1341, 1344 n 2 [3d Dept 2023]; Matter of Hutchinson v Annucci, 189 AD3d 1850, 1854-1855 [3d Dept 2020]; see also Matter of Newsday LLC v New York State Educ. Dept., 244 AD3d 1359, 1361 n 2 [3d Dept 2025]; Matter of Cross-Sound Ferry Servs. v Department of Transp., 219 AD2d 346, 350 [3d Dept 1995]; but see Matter [*9]of Johnson v New York City Police Dept., 257 AD2d 343, 349 [1st Dept 1999], lv dismissed 94 NY2d 791 [1999]).

Respondent claimed that the records in question were exempt from disclosure pursuant to Public Officer's Law § 87 (2) (f), the same statute from which the public safety exemption is grounded, yet it specifically asserted that the alleged danger was to undercover officers themselves, not the public at large. Accordingly, we disagree with this Court's decision to broaden the basis for exemption invoked by respondent to include a supposed threat to the public as doing so "contravenes Court of Appeals precedent as well as the spirit and purpose of FOIL" (Matter of Aron Law, PLLC v Town of Hempstead, 242 AD3d 880, 882 [2d Dept 2025] [internal quotation marks and citations omitted], lv dismissed 44 NY3d 1072 [2026]) and goes "beyond [this Court's] mandate to judge the propriety of the agency's action solely by the grounds invoked by the agency" (Matter of Union Carbide Corp. v New York State Dept. of Envtl. Conservation, 189 AD3d 1805, 1809 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Matter of Reclaim the Records v New York State Dept. of Health, ___ NY3d at ___, 2025 NY Slip Op 03102, *5; Matter of Aron Law PLLC v Sullivan County, 214 AD3d 1186, 1187 [3d Dept 2023]; Matter of New York Civ. Liberties Union v City of Syracuse, 210 AD3d 1401, 1405-1406 [4th Dept 2022]).

In any event, we would also find that the submissions upon remittal do not support invocation of the public safety exemption (compare Matter of Digital Forensics Unit v Records Access Officer, 214 AD3d 532, 533 [1st Dept 2023]; Matter of Empire Ctr. for Pub. Policy v New York City Off. of Payroll Admin., 187 AD3d 435, 435 [1st Dept 2020], lv denied 36 NY3d 906 [2021]).

Accordingly, as we would affirm Supreme Court's order directing disclosure of the requested records, we respectfully dissent.

Aarons, J., concurs.

ORDERED that the judgment is reversed, on the law, without costs, and petition dismissed.

Footnotes

Footnote 1: Redacting only the undercover training entries would highlight the very fact sought to be concealed, namely, that the officer received undercover training.

Footnote 2: While the list of decertified officers is publicly available online, most of the information contained therein relates to decertification and is therefore of no assistance in determining what information is contained on respondent's registry of certified officers. Additionally, as the majority notes, petitioners have provided what appears to be a "Training History Report" for an individual officer which was purportedly disclosed as part of a prior FOIL request. This document may provide some guidance as to what information respondent maintains, yet it does not provide much light as to what respondent may deem responsive to this request.

Footnote 3: Respondent is not statutorily required to include an officer's residential city, town or zip code in the registry it maintains and the "Training History Report" provided by petitioner does not contain such information, further evidencing that it is unclear from our record what data points respondent maintains.

Footnote 4: Although date of birth may constitute private information (seeMatter of Data Tree, LLC v Romaine, 9 NY3d 454, 463 [2007]) and has been subject to redaction when respondent has provided responsive records to other FOIL requests, as evidenced by the submissions provided in support of the petition, this has not been raised as a basis for redaction by respondent in the context of the underlying FOIL request or through the course of this proceeding (compare Matter of Newsday LLC v New York State Educ. Dept., 244 AD3d 1359, 1361 n 2 [3d Dept 2025]; see generallyMatter of Reclaim the Records v New York State Dept. of Health, ___ NY3d at ___, 2025 NY Slip Op 03102, *7). Nevertheless, petitioners' request indicates that birth year or current age are acceptable alternatives to the disclosure of the officer's full date of birth.